2013 VT 19

## State of Vermont v. Mark A. Snow

[70 A.3d 971]

No. 12-002

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed March 15, 2013

*David R. Fenster*, Addison County State's Attorney, *Christopher E. Perkett*, Deputy State's Attorney, and *Jordan J. Benjamin*, Legal Intern, Middlebury, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Dawn Matthews*, Appellate Defender, Montpelier, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** Defendant appeals his conviction for sexual assault under 13 V.S.A. § 3252. Defendant contends that the trial court gave an improper jury instruction, mischaracterizing the law and eliminating the State's burden to prove each and every element of the crime as charged. We conclude that the jury instruction accurately reflected the law as applied to the circumstances of this case and that the instruction did not compromise

defendant's ability to contest the charges against him. We therefore affirm.

¶ 2. The salient facts and procedural background are as follows. Defendant was charged with sexual assault in connection with an incident that followed an alcohol-fueled New Year's Eve party on December 31, 2009. The State alleged that defendant sexually assaulted the victim while she was unconscious in a bedroom where she had gone to sleep after feeling ill. The victim testified that she awoke in pain with defendant's penis inside of her, immediately yelled at him, and left the room.

¶ 3. Defendant, meanwhile, testified that the alleged victim called him into the bedroom. Defendant testified that he did not insert his penis into the alleged victim, but that they engaged in mutual fondling, which he claimed the victim initiated.

¶ 4. After the parties completed their cases, the court instructed the jury. As part of the initial instruction, the court indicated:

> The third essential element is that [defendant] compelled [complainant] to participate in the sexual act without [complainant's] consent. "To compel" means to deliberately use force or to exert pressure to overcome the will of the other person. "Consent" means words or actions by the other person indicating a voluntary agreement to engage in a sexual act. "Consent" means consent of the will. Lack of consent may be shown if [defendant] had sexual contact with [complainant] without the opportunity for her to consent. Lack of consent may be shown without proof of resistance. [Complainant] did not consent if [defendant] knew that [complainant] was not physically capable of resisting or declining to consent to the sexual act. Alternatively, [complainant] did not consent if [defendant] knew that [complainant] was unaware that a sexual act was being committed.

¶ 5. During deliberations, the jury asked the court to "clarify what 'compel' means." The trial court drew language from *State v. Hazelton*, 2006 VT 121, 181 Vt. 118, 918 A.2d 224, and proposed the following: "No actual force or compulsion [was] necessary to commit the offense . . . . The element of compulsion is satisfied by lack of consent alone." After discussing the proposed response with counsel, the court gave jurors a written answer over a defense objection. The answer, drawn almost verbatim from *Hazelton*, read:

The law prohibits a person from compelling another person to participate in a sexual act without the consent of the other person. No actual force or compulsion is necessary to commit the offense. A person is "compelled" to engage in a sexual act in violation of the law as the result of an offender's conduct to unilaterally engage another in a sexual act without consent, that is, without any indication that the victim is freely willing to participate. Consent means words or actions by a person indicating a voluntary agreement to engage in a sexual act. The element of compulsion is satisfied by lack of consent alone.

¶ 6. Defense counsel objected to the supplemental instruction, stating, in effect, that the original instruction adequately described the relevant law and that the court should not tailor a standard jury instruction to accommodate the specific factual allegation that the complainant was asleep or otherwise unaware of the assault. After deliberating for another hour, the jury convicted. The court later denied defense counsel's motion for a new trial. Defendant appeals.

I

¶ 7. Defendant first contends that the trial court improperly drew upon our language in *Hazelton* to describe the applicable law. We disagree.

¶ 8. On appeal, we review jury instructions as a whole to determine if they accurately reflect the law.[1] *State v. Rideout*, 2007 VT 59A, ¶ 17, 182 Vt. 113, 933 A.2d 706. This Court assesses whether the instructions "provided sufficient guidance to the jury without introducing prejudice into their deliberations." *State v. Kolibas*, 2012 VT 37, ¶ 11, 191 Vt. 474, 48 A.3d 610 (quotation omitted). "Within the parameters of the law, the trial court may exercise its discretion in the wording of the jury charge . . . ."

---

[1] On appeal, the State has not questioned the adequacy of defendant's objection to the supplemental jury instruction. For purposes of this appeal, we will assume without deciding that defendant's objection was sufficiently specific and detailed to preserve the issue for our review. See V.R.Cr.P. 30 ("No party may assign as error any portion of the [jury] charge or omission therefrom unless he objects . . . stating distinctly the matter to which he objects and the grounds of his objection.").

*Rideout,* 2007 VT 59A, ¶ 17 (quotation omitted). "The instructions must accurately state the law on every theory fairly put forward by the evidence." *State v. Verrinder,* 161 Vt. 250, 266, 637 A.2d 1382, 1392 (1993). We conclude that in light of the evidence and testimony presented, the language the court selected accurately described Vermont's sexual-assault law as it relates to a sleeping or otherwise unconscious victim.

■ ■ ¶ 9. "To convict defendant of sexual assault under 13 V.S.A. § 3252(a)(1)(A), the State [is] required to prove that [defendant] engaged in a sexual act with the victim without [the victim's] consent." *State v. Desautels,* 2006 VT 84, ¶ 7, 180 Vt. 189, 908 A.2d 463. The statute defines consent as "words or actions by a person indicating a voluntary agreement to engage in a sexual act." 13 V.S.A. § 3251(3). Under the State's theory, the alleged assault took place while the victim was asleep. The victim testified that she did not consent to sexual contact with defendant before she went to sleep, and it is self evident that she could not do so once asleep because a person who is not awake is physically incapable of consenting. See 3 C. Torcia, Wharton's Criminal Law § 282 (15th ed. 1995) ("A victim is obviously incapable of consenting to sexual intercourse when she is unconscious or asleep.").

■ ■ ¶ 10. In response to the jurors' confusion regarding the meaning of the word "compel" as used in the court's initial instructions, the judge responded, in part, that the "element of compulsion is satisfied by lack of consent alone." This is a nearly verbatim description of our sexual-assault law. The sexual-assault statute indicates, in relevant part:

> No person shall engage in a sexual act with another person and compel the other person to participate in a sexual act:
>
> (1) without the consent of the other person; or
>
> (2) by threatening or coercing the other person; or
>
> (3) by placing the other person in fear that any person will suffer imminent bodily injury.

13 V.S.A. § 3252(a). As we observed in *State v. Nash,* 144 Vt. 427, 433, 479 A.2d 757, 760 (1984), these subdivisions do not describe separate crimes but rather "separate ways by which the single

offense of 'compelling' may be committed."[2] We reiterated this in *Hazelton,* from which the trial court drew the challenged jury-instruction language. In *Hazelton,* we observed:

> The victim is "compelled" to engage in a sexual act in violation of § 3252 . . . as the result of an offender's conduct to unilaterally engage another in a sexual act "without consent," that is, without any indication that the victim is freely willing to participate.

2006 VT 121, ¶ 26 (citing *Nash,* 144 Vt. at 433, 479 A.2d at 760).

■ ¶ 11. The language the trial court excerpted from *Hazelton* accurately indicates that a proven lack of consent on the part of a sleeping or unconscious victim will satisfy the statutory require-ment of compulsion under 13 V.S.A. § 3252(a). Accord *State v. Moorman,* 358 S.E.2d 502, 506 (N.C. 1987) ("In the case of a sleeping, or similarly incapacitated victim, it makes no difference whether the indictment alleges that the vaginal intercourse was by force and against the victim's will or whether it alleges merely the vaginal intercourse with an incapacitated victim. In such a case sexual intercourse with the victim is *ipso facto* rape because the force and lack of consent are implied in law."); *Paul v. State,* 240 S.E.2d 600, 602 (Ga. Ct. App. 1977) ("Sexual intercourse with a woman whose will is temporarily lost from intoxication, or uncon-sciousness arising from use of drugs or other cause, or sleep, is rape.").

■ ¶ 12. Defendant's contention that *Hazelton* dealt with a juvenile victim and should therefore not be "extended" to situa-tions involving adult victims lacks merit because our analysis of the compelled sexual assault statute there merely repeated our understanding that the element of compulsion could be satisfied by a proven lack of consent. 2006 VT 121, ¶ 26 (citing *Nash,* 144 Vt. at 433, 479 A.2d at 760). A sleeping person — adult or juvenile — cannot consent while asleep. Thus, it is irrelevant that the complainant in this case was an adult as opposed to a minor, and use of *Hazelton*'s description of compelled sexual assault is therefore not an extension of governing law but rather a reitera-tion of it.

---

[2] The sexual assault statute has since been reordered without alteration to the relevant language. We present the current version for ease of a reference.

¶ 13. Because we conclude that the jury instructions as a whole accurately stated the law, we find defendant's allegation of error to be without merit. See *State v. Baird*, 2006 VT 86, ¶ 31, 180 Vt. 243, 908 A.2d 475 (affirming conviction where jury instructions "accurately and fairly reflect[ed] the law").

## II

¶ 14. Having concluded that the court's instruction adequately reflected the law generally, we must still determine whether the instruction eliminated an element of the crime as specifically charged by the State, thereby compromising defendant's ability to prepare and present his defense. See *State v. Aiken*, 2004 VT 96, ¶ 14, 177 Vt. 566, 862 A.2d 285 (mem.) (reversing trial court's denial of new trial where defendant's ability to prepare and present defense was "substantially prejudiced" by jury instruction); *Kolibas*, 2012 VT 37, ¶ 16 (reversing defendant's sexual-assault conviction where court's jury instruction eliminated the defense upon which defendant had built his case). Defendant here claims that the "court told the jury that compel basically meant nothing, even though the State charged it, the parties had argued it, and the court originally instructed on it." We disagree.

■ ¶ 15. Unlike in *Aiken*, the information and accompanying affidavit here put defendant on notice of the State's — legally sustainable — theory of the case. In *Aiken*, we reversed a defendant's conviction because an erroneous instruction permitted the jury to consider conduct that was not encompassed by the charging information. 2004 VT 96, ¶ 12. Although the affidavits accompanying the information in that case clearly outlined additional conduct that would have supported a conviction, the information's specificity by way of added "to wit" language and the State's trial conduct narrowed the scope of the charges in a way that the defendant could not have "reasonably anticipated that the . . . charge involved conduct other than the specific allegation contained in the information." *Id.* ¶ 12. That is not the case here.

■ ¶ 16. The State consistently argued that defendant engaged in a sexual act with the victim while she slept. The information alleged that "on or about January 1, 2010, [defendant] engaged in a sexual act with another person and compelled the other person to participate in a sexual act without the consent of the other person, in violation of 13 V.S.A. § 3252(a)(1)." Rather than outlin-

ing — or limiting — the conduct constituting the alleged criminal behavior, the information merely reiterated the statutory language. See 13 V.S.A. § 3252(a) ("No person shall engage in a sexual act with another person and compel the other person to participate in a sexual act . . . without the consent of the other person . . . ."). One of the accompanying police affidavits provided the specifics of the allegations. See *Aiken*, 2004 VT 96, ¶ 10 ("To the extent that there is ambiguity in the information, reference may be had to the affidavit of probable cause." (internal quotation marks and alterations omitted). In the affidavit, a police officer asserted that the alleged victim said in a sworn statement that when she woke up "sometime around dawn" she was "naked from the waist down" and the defendant was "having intercourse with her." During its opening arguments, the State outlined a theory of the case consistent with the assertion that the victim was unconscious when the assault took place. The State said:

> [The victim will] tell you as soon as she laid down she became unconscious. She'll also tell you that as soon as she laid down she had her clothes on, she was fully clothed when she hit that bed. The next thing she knew she felt sharp pain. *And as she regained consciousness she realized that the defendant was having sex with her.* She realized that her pants and her underwear had been removed and that his penis was in her vagina.

¶ 17. Consistent with the State's opening statement, the victim testified that she woke up with defendant on top of her and having sex with her. The State in its closing argument again told jurors that defendant assaulted the victim as she was unconscious.

¶ 18. Furthermore, defendant did not, as he now claims on appeal, argue that compulsion was an element of the specific charges against him and then base his defense on a lack of such compulsion. Rather the defendant employed a dual defense of denial and consent. In the defense's opening statement, counsel questioned the sufficiency of the evidence and called into question the capacity of witnesses who had consumed alcohol the night of the alleged assault to accurately recall events. Defendant testified that he had attempted to go to sleep on a loveseat in the living room of the house where the New Year's Eve party took place but that the victim later called defendant into the bedroom. Defendant said that he and victim did not engage in sexual intercourse, but

that they had engaged in other sexual activities. Specifically defendant testified that at some point after falling asleep next to the alleged victim, he awoke to the victim kissing him, and said that they then consensually fondled one another. Indeed, defense counsel during closing arguments made no reference to an independent element of compulsion. Instead, counsel told jurors: "Really the only issue in dispute in this trial is the issue of consent or lack of consent." Counsel then described the State's allegation that the victim had been assaulted while sleeping as "incredible," opining that "[n]o one can sleep through a sexual assault unless you have a medical condition," and that she was neither too drunk to consent nor was she drugged.

¶ 19. Without objection from the defense, the court initially described "compel[ling complainant] to participate in the sexual act without her consent" as a single element of the offense. After the jury's question regarding the meaning of compel, the court clarified, over defense counsel's objection, by drawing language from our decision in *Hazelton* to state, in part, that "[t]he element of compulsion is satisfied by lack of consent alone."

■■■ ¶ 20. The jury evidently credited the State's version of events and convicted. See *State v. Cate*, 165 Vt. 404, 414, 682 A.2d 1010, 1018 (1996) (affirming denial of new trial for defendant convicted of sexual assault where jury credited State's contention that victim was so intoxicated that defendant would have known she was not capable of consent). Nothing about the judge's supplemental jury instruction in any way compromised the defense upon which defendant built his case. See *Kolibas*, 2012 VT 37, ¶ 16. Nor can we conclude that the instruction unfairly surprised the defendant by introducing a novel theory of the case because it did nothing to alter the jury's understanding of the charged conduct as clearly outlined in the affidavits accompanying the information. See *Aiken*, 2004 VT 96, ¶ 10 (observing that we do not ordinarily "allow a defendant to claim surprise or inability to prepare an adequate defense merely because the information is missing details that can be ascertained easily by reading the accompanying affidavit"). Thus, the jury instruction did not diminish the State's burden to establish the elements of the crime as charged.

¶ 21. Because we conclude that the jury instruction accurately described the law and did not alter any elements of the crime as charged, we affirm.

*Affirmed.*