*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-422

OCTOBER TERM, 2015

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Bennington Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Joseph F. Smith | } | DOCKET NO. 936-9-12 Bncr |

Trial Judge: Nancy S. Corsones

In the above-entitled cause, the Clerk will enter:

Defendant appeals from his conviction of attempted sexual assault and aggravated sexual assault following a jury trial. He argues that the court erred in: (1) instructing the jury on the meaning of "compulsion"; (2) denying his motion for judgment of acquittal; and (3) admitting text messages between himself and the complainant. We affirm.

Defendant and the complainant were involved in a long-term romantic relationship. They lived together, owned a home together, and have children together. As relevant here, defendant was charged with both attempting to engage in a sexual act with the complainant and attempting to compel her to participate in a sexual act without her consent in violation of 13 V.S.A. § 3252(a)(1). He was also charged with aggravated sexual assault for subjecting the complainant to repeated nonconsensual sexual acts as part of a common scheme and plan in violation of 13 V.S.A. § 3253(a)(9).

Defendant and the complainant sometimes communicated by text message even while at home together. Before trial, the State sought to admit some of these messages at trial; defendant opposed its request. The court found that many of the text messages showed defendant demanding sex from the complainant, harassing her at work, threatening to take their children away from her, fighting over money, arguing about what she did outside of the house, and making rude statements. Some statements showed defendant's motivations, his desire to coerce the complainant to have sex with him, and his knowledge that she did not wish to have sex with him. The court indicated that it would allow a limited number of these statements to be admitted at trial, finding statements that related directly to defendant demanding sexual favors, despite the complainant's refusal, most relevant. The court excluded messages that concerned fights about money, the children, and the parties' schedules.

The court also considered if the text messages contained inadmissible hearsay. It found that the majority of the excerpted text messages were not hearsay, but rather admissions of a party-opponent. Additionally, many of the statements did not contain facts that could be

considered true or false; other messages contained statements that were not meant to be taken literally as true.

At trial, the complainant testified as follows. The parties had an on-again-off-again relationship. In 2012, the complainant caught defendant cheating on her. Their relationship went downhill after that. The complainant started refusing defendant's requests to have sex and she began sleeping on the couch. Defendant would threaten to not let the complainant use the car to get to her job or take the children to daycare unless she had sex with him. Defendant told her that if she took the car, he would report to the police that she had stolen it. The complainant testified that she was scared. She stated that sometimes she acquiesced in sexual activity but other times, she told defendant no.

The complainant described an incident that occurred in August 2012. She was sleeping on the couch and defendant began texting her, telling her to come and take care of "bedroom duties." She told him no. Defendant then came out into the living room and started touching her. She told him again to stop and to leave her alone. He digitally penetrated her and then had sex with her. He then texted her in the morning and asked her if she wanted "another round." The complainant stated that she continued living at the home because she had nowhere else to go. Later that same week, defendant again asked the complainant for sex, telling her that she could not use the car unless she complied. She told him no. Defendant climbed on top of the complainant, took off her pants, and had sex with her. She put a pillow over her face so that she did not have to look at him. Another incident occurred in early September, which the complainant recorded on her phone. In this incident, the complaint repeatedly told defendant to leave her alone. He repeatedly put his hands down her shirt and repeatedly tried to digitally penetrate her as well. The incident lasted for forty minutes, and the audio recording was played for the jury. The complainant eventually ran next door and called the police.

At the close of the State's case, defendant moved for a judgment of acquittal, which the court denied. Defendant's brother testified on defendant's behalf. The jury found defendant guilty of sexual assault and aggravated sexual assault. On a special verdict form, the jury indicated that it did not find defendant guilty of attempted sexual assault for attempting to insert his finger into the complainant's vagina, but it did find him guilty of attempted sexual assault by attempting to compel her to engage in sexual intercourse with him.

Defendant then renewed his motion for judgment of acquittal, or alternatively, asked for a new trial. He argued that the evidence was insufficient to support his convictions because, having been acquitted of attempted sexual assault for attempting to insert his fingers into the complainant's vagina, his remaining conduct consisted solely of words, which could not rise to the level of compulsion no matter how threatening. Defendant also asserted that the complainant acquiesced in having sex with him. Additionally, defendant argued broadly that the State should not have been allowed to introduce the complainant's hearsay statements through a series of text messages. He argued that the State failed to provide a proper hearsay exception to support admission, the admission was more prejudicial than probative, and the texts were not complete. Defendant did not identify any particular text message. Finally, defendant argued that the court erred in instructing the jury that the element of compulsion could be satisfied solely by a finding of lack of consent. Defendant maintained that compulsion was a separate element that required

him to act beyond mere words or threats, and to purposely compel the complainant into engaging in the sexual act.

The court denied defendant's motion. It found that the complainant had described in detail each of the assaults for which defendant had been convicted, and her sworn testimony alone was sufficient to withstand the motion for judgment of acquittal. The jury also had a lengthy recording of one of the assaults wherein the complainant expressed her lack of consent over 280 times. Additionally, the jury had text messages wherein defendant threatened to report the complainant for stealing his car unless she had sex with him. Taken in the light most favorable to the State, the court found the evidence more than sufficient to support defendant's convictions. Turning to the admissibility of the text messages, the court explained that this had been an ongoing issue at trial. Both parties argued that further and additional text messages should be admitted to provide "context" to the ongoing conversations. The State sought to admit sixty-nine pages of text messages, and clearly, some of the messages were admissible as the admission of a party-opponent. Additional messages were admissible to provide context, as some of defendant's statements, if admitted alone, could have been highly inflammatory. Defendant failed to identify which text messages were the subject of his motion for judgment of acquittal. Not all of the messages were "hearsay with no exception" as defendant argued. Without further specific challenge, the court rejected the argument that the text messages were improperly admitted. Finally, the court explained that it had based its jury instruction on consent on State v. Snow, 2013 VT 19, 193 Vt. 390, which holds that the element of compulsion can be found by a lack of consent. It was not the law, as defendant asserted, that "compulsion is a separate element requiring defendant to act beyond mere words or threats but to purposely compel the complainant into engaging in the sexual act." Words alone that indicated a person's lack of consent were sufficient. The court thus denied defendant's motion. This appeal followed.

We begin with defendant's challenge to the court's jury instructions. Defendant asserts that the court erred in relying on Snow to define compulsion. He maintains that the Court's statement that "[t]he element of compulsion is satisfied by lack of consent alone," is limited to the facts presented in Snow, which involved an unconscious victim. In this case, defendant argues, the complainant was capable of consenting and therefore the court's instruction does not accurately reflect the law as applied to this case.

We find no error. A jury charge will be upheld "[i]f the charge, taken as a whole and not piecemeal, breathes the true spirit of the law, and if there is no fair ground to say that the jury has been misled." State v. Gokey, 136 Vt. 33, 36 (1978). The court's instruction satisfies this standard. As we recognized in Snow, the statement that the "element of compulsion is satisfied by lack of consent alone" is essentially a verbatim description of Vermont's sexual assault law. 2013 VT 19, ¶ 10. The law makes it a crime to "engage in a sexual act with another person and compel the other person to participate in a sexual act." 13 V.S.A. § 3252(a). It provides three ways in which the single offense of "compelling" may be committed, including a lack of consent. Id. § 3252(a)(1); Snow, 2013 VT 19, ¶ 10 (so holding). The statute defines "consent" as "words or actions by a person indicating a voluntary agreement to engage in a sexual act." 13 V.S.A. § 3251(3). It is clear that the statement that defendant challenges from Snow does not depend on the particular facts present in that case, and the court did not err in relying on Snow in fashioning its instruction here.

3

There is ample evidence to support defendant's convictions, and the court properly denied defendant's motion for a judgment of acquittal. See State v. Ellis, 2009 VT 74, ¶ 21, 186 Vt. 232 (Supreme Court reviews denial of motion for judgment of acquittal de novo, considering whether evidence, when viewed in light most favorable to State and excluding modifying evidence, fairly and reasonably tends to convince reasonable trier of fact that defendant is guilty beyond a reasonable doubt). As set forth above, the complaint testified that defendant repeatedly asked her for sex and she told defendant "no" multiple times. She testified to defendant's persistence in the face of her refusals. She stated that defendant had sex with her without her consent. There were also text messages and an audio recording in which the complainant voiced her lack of consent to sexual activity with defendant more than 280 times. While defendant argues that his words did not show an attempt to compel the complainant to have sex with him, and that the complainant had sex with him "of her own free will," the jury obviously concluded otherwise and it had ample evidence upon which to base this conclusion. The trial court did not err in denying defendant's motion for judgment of acquittal.

Finally, we reject defendant's assertion that the court erred in admitting text messages at trial. Defendant argues generally that the probative value of the text messages did not outweigh the danger of unfair prejudice because the messages were cumulative, wasted time, caused undue delay, confused the issues, and appealed to the jury's emotions. As below, defendant does not identify any particular text message. The record shows that the trial court exercised its discretion and considered the possible prejudice from admitting the text messages. It concluded with respect to the messages that it admitted that the prejudicial effect of the messages did not outweigh their probative value. While defendant disagrees with the court's conclusion, he does not show any abuse of discretion. See State v. Simoneau, 2003 VT 83, ¶ 21, 176 Vt. 15, 22-23 (2003) (stating that to show abuse of discretion, defendant must demonstrate that trial court "either withheld its discretion or exercised it on clearly unreasonable or untenable grounds," and Supreme Court "will not interfere with discretionary rulings of the trial court that have a reasonable basis").

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

4