NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 114

No. 2016-312

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Grand Isle Unit, |
| | Criminal Division |
| | |
| Francis L. Lampman | September Term, 2017 |

Thomas Z. Carlson, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, Dawn Matthews, Appellate Defender, and
  Rebecca Blackmon, Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.


PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1.    **ROBINSON, J.**    Defendant appeals his burglary conviction arising from his entering a partially constructed house to steal roofing materials. He argues that the trial court erred in instructing the jury on the definition of "building or structure" for the purposes of the burglary statute, and that the evidence was insufficient to prove that he entered a "building or structure." We affirm.

¶ 2.    The State presented the following evidence in connection with the burglary and petit larceny charges against defendant. A witness who was praying at a shrine across the street from a construction site at 10:30 p.m. heard noise and decided to investigate. The witness snuck behind a tree on the construction site and saw someone, later identified as defendant, moving

roofing material "back and forth" between the building under construction and a porta potty stationed next to the driveway. He did not see defendant actually enter the house. The witness called 911 to report what he saw. Moments later, a small, dark Sport Utility Vehicle (SUV) pulled in, and the witness observed two people load the material into the SUV and pull away.

¶ 3. Based on the witness's description, deputies with the Grand Isle Sheriff's Department caught the SUV soon after it left the site. The deputies saw multiple boxes of roofing material through the back windows of the vehicle. The deputies identified defendant as the passenger and his cousin as the driver. Defendant offered several different and incompatible explanations in close succession as to why he was on the site and what he had done. At one point, defendant told the officer that both he and his cousin pulled into the site together, noticed the material on a pallet right next to the porta potty, and simultaneously loaded the material into the vehicle. When confronted with the witness's statement that someone had been at the site moving the material before the vehicle pulled in, defendant then said his cousin had dropped him off and he had moved the material alone, but that he and his cousin eventually loaded the material into the vehicle together.

¶ 4. The construction site manager testified that when he was on-site the morning before the day of this incident, the house under construction had framed walls, with Tyvek wrapping on the exterior[1]; roof dormers, but not roof rafters; a constructed first and second floor; and window and door openings, but without glass in the windows or actual doors in the door openings.

¶ 5. The manager testified that when the roofing material was delivered two days before the theft, the crew was not ready to use it, so they placed it in the house's first-floor stairwell opening. The manager explained that the company had a policy—which all the employees knew of—to keep this material indoors because its adhesive gets ruined in direct sunlight. When the

---

[1] A different witness testified that he had driven by the site on the date of the incident and that the house lacked Tyvek wrapping.

manager was on-site the day before the incident, the material was still located under the stairwell, and the manager did not tell anyone to remove it. He was confident that the material, which weighed at least forty to fifty pounds per package, was still under the stairwell on the night of the incident because, if left outside, it would have been in the way of the basket lift for the roof construction that was underway.

¶ 6.　At the close of the State's case, defendant moved for judgment of acquittal on the burglary charge under Vermont Rule of Criminal Procedure 29, arguing that the State had presented insufficient evidence to prove that defendant actually entered the partially constructed house to take the roofing material. He also argued that the State had not established that the project constituted a "building or structure." The court denied his motion.

¶ 7.　Defendant testified in his defense. He did not deny that he and his cousin went to the construction site to take roofing material. However, he testified that the roofing material that he and his cousin took was left on a pallet on the grass at the construction site, not within the building. Defendant maintained that he did not go inside the partially constructed house. He explained that he moved the material between two locations before loading it into the SUV because his cousin wanted it closer to the porta potty.

¶ 8.　Throughout the proceedings before the trial court, defendant admitted to stealing the roofing materials, but denied the burglary charge. Before the start of the trial, defendant moved to dismiss the burglary charge, arguing that the partially completed house did not meet the definition of "building or structure" under Vermont's burglary statute, 13 V.S.A. § 1201. He contended that, for the purposes of § 1201, the structure needed to at least have completed framing, doors, windows, walls, and a roof. The trial court denied defendant's motion, holding that "the home, even though incomplete, qualifies as a 'building' or 'structure' within the common meaning of those words."

3

¶ 9. At the charge conference, defendant sought an instruction that defined building or structure "as a man-made enclosed space completed to the point where it is capable of being occupied or used as intended." The court rejected defendant's proposed instruction and gave this instruction regarding the definition of "building or structure" in § 1201:

> [A required] element is that [defendant] entered a building or structure, in this case a building that was under construction . . . . A building or a structure encloses a space within its walls and is usually but not necessarily covered with a roof or otherwise closed in. The building or structure need not be completed or fully closed in. Entry does not require breaking in. It means go into a generally enclosed space.

Defendant renewed his objection following the jury charge.

¶ 10. After the jury returned a guilty verdict on both charges, defendant renewed his Rule 29 motion for judgment of acquittal on the burglary count and moved for a new trial pursuant to Vermont Rule of Criminal Procedure 33 on the basis of the court's instruction to the jury regarding the definition of "building or structure" under § 1201. The trial court denied defendant's motions.

¶ 11. On appeal, defendant argues that (1) the jury instruction was erroneous because the language "building or structure" in 13 V.S.A. § 1201 requires that the structure have a roof[2]; and (2) the State presented insufficient evidence of burglary because it failed to show that he actually entered the partially constructed house and failed to prove that it was a "building or structure."

I. Definition of "Building or Structure"

¶ 12. Defendant's challenge to the trial court's jury instruction in this case turns on the meaning of "building or structure" in the burglary statute, 13 V.S.A. § 1201. See State v. Snow, 2013 VT 19, ¶ 8, 193 Vt. 390, 70 A.3d 971 (explaining that "we review jury instructions as a whole

---

[2] Defendant has shifted slightly from his focus before the trial court. At trial, he urged the court to instruct the jury that a building or structure must be completed to the point of being used as intended. On appeal, his specific challenge to the court's instruction is that it allowed the jury to convict him even though the partially constructed house lacked a roof. We do not address the State's preservation challenge arising from this shift in focus because we affirm on other grounds.

4

to determine if they accurately reflect the law"). In reviewing whether the jury instruction accurately characterized the law, we interpret the statutory language of § 1201 without deference to the trial court. Stowell v. Action Moving & Storage, Inc., 2007 VT 45, ¶ 9, 182 Vt. 98, 933 A.2d 1128. We attempt to ascertain legislative intent by examining the statute's plain language; if the meaning behind the language is clear, we enforce the statute according to its terms. Id.

¶ 13.    Section 1201 states that a "person is guilty of burglary if he or she enters any building or structure knowing that he or she is not licensed or privileged to do so, with the intent to commit a felony, petit larceny, simple assault, or unlawful mischief." 13 V.S.A. § 1201(a) (emphasis added). The statute specifies that that terms building and structure should be construed "according to their common meanings." Id. § 1201(b)(1).

¶ 14.    We reject defendant's argument that an edifice is not actually a building or structure under § 1201(a) unless it has a roof. We base our conclusion first and foremost on the plain meaning of the statutory language. None of the cases cited by defendant undermine our reading, which is consistent with persuasive authority from other jurisdictions. We reject defendant's contention that we are impermissibly expanding the scope of the burglary statute; our interpretation is consistent with the broadening of the common law elements of burglary in Vermont's burglary statute, as well as burglary statutes in other states. We likewise reject defendant's arguments that our reading allows for impermissible overlapping crimes for the same conduct, or that it reduces the State's burden of proof.

¶ 15.    The plain meaning of "building or structure" in § 1201(a) is quite broad. Black's Law Dictionary defines "structure" as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together." Structure Black's Law Dictionary (10th ed. 2014); see also The American Heritage College Dictionary 1347 (3d ed. 1993) (defining "structure" as "[s]omething made up of a number of parts that are held or put together in a

particular way").[3] The definition in § 1201(a) expressly extends to <u>any</u> structure. See <u>State v. Storey</u>, 179 P.3d 1137, 1142 (Kan. 2008) ("It appears that the legislature, by placing the word 'any' before 'building,' intended that the statute include buildings of whatever kind." (quotation omitted)). The statute implicitly and significantly narrows this nearly boundless definition to structures that one can "enter," but the court's omission of a roof requirement in this case is not inconsistent with this limitation. Finally, § 1201(a) enumerates "buildings" and "structures," thus suggesting that the Legislature understood "structure" to have a distinct meaning from "building." In sum, we conclude that a jury instruction that defines "building or structure" to include enclosures that lack a roof is consistent with the plain language of § 1201(a).[4]

¶ 16.    None of the cases cited by defendant support the contention that a "structure" must have a roof. Defendant cites several cases requiring that a "building" have a roof. See <u>People v. Chavez</u>, 140 Cal. Rptr. 3d 860, 865 (Ct. App. 2012); <u>State v. Ashby</u>, 339 S.W.3d 600, 607 (Mo. Ct. App. 2011); <u>People v. Powell</u>, 957 N.Y.S.2d 807 (App. Div. 2012); see also <u>Dalton v. Commonwealth</u>, 418 S.E.2d 563, 564-65 (Va. Ct. App. 1992) (requiring a "storehouse" to have a roof). But defendant has not provided authority—nor were we able to find any—that construes the term "structure" in a burglary statute to mandate a completed roof.

¶ 17.    Our holding in this case is consistent with decisions in other jurisdictions concluding that a fenced-in enclosure may, at least in certain circumstances, be a "structure" within the meaning of a burglary statute. For example, the Washington Supreme Court concluded that a

---

[3]    We focus on the definition of "structure" under § 1201(a) rather than building because we conclude that with respect to the necessity of a roof, the term "structure" may be broader than building. Accordingly, we need not and do not decide whether the definition of "building" requires a roof.

[4]    We need not decide whether the trial court's instruction in this case would be sound in all circumstances. We limit our analysis to the challenge on appeal here—that the instruction was in error because it omitted a roof requirement. In addition, we do not weigh in on the question of whether and under what circumstances a simple fenced-in enclosure would qualify as a structure under § 1201(a).

6

six-to-seven-foot fence topped by barbed wire raising the barrier to nine or ten feet, that surrounded a property that was fully enclosed by the fence or building walls, was a "structure" within the burglary statute. State v. Roadhs, 430 P.2d 586, 588 (Wash. 1967) superseded by statute, Wash. Rev. Code Ann. § 9A.04.11, as recognized in State v. Engel, 210 P.3d 1007 (Wash. 2009). The court explained:

> Were the fence a mere boundary fence or one erected for the sole purpose of esthetic beautification, it would not constitute a "structure" as that term was intended to be interpreted by the legislature. However, where the fence is of such a nature that it is erected mainly for the purpose of protecting property within its confines and is, in fact, an integral part of a closed compound, its function becomes analogous to that of a "building" and the fence itself constitutes a 'structure' subject to being burglarized.

Id.; see also People v. Moyer, 635 P.2d 553, 556 (Colo. 1981) (en banc) (holding that fenced enclosure serving as outdoor kennel qualified as an "occupied structure" under burglary statute); Joy v. State, 460 N.E.2d 551, 558-59 (Ind. Ct. App. 1984) (holding that fence surrounding lumber yard was structure under burglary statute as its purpose was protecting property within its confines and it was integral part of closed compound); Stanley v. State, 512 P.2d 829, 831-32 (Okla. Crim. App. 1973) (explaining that where lumber yard was completely enclosed by fence or building walls, fence was structure). But see State v. Alexander, 353 So. 2d 716, 717 (La. 1977) (holding that fenced yard was not a "structure" within intention of term in burglary statute); State v. Foulenfont, 895 P.2d 1329, 1332 (N.M. Ct. App. 1995) (same); State v. Fisher, 658 P.2d 1021, 1021 (Kan. 1983) (holding that hog pen enclosures with three-foot high side panels and no roof were not structures under burglary statute as "the only persons to whom such low sides would constitute actual physical barriers are young children").

¶ 18. Defendant's argument that this reading impermissibly expands the reach of the burglary statute beyond its common law contours fails to recognize that the Vermont Legislature has deliberately expanded the range of interests protected by the burglary statute beyond habitation

7

to include heightened expectations of security and privacy—an expansion that resonates with the modern trend across the country.

¶ 19. Defendant is correct that at common law the crime of burglary sought to protect habitation interests. The U.S. Supreme Court has explained that the original elements of burglary consisted of "breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony." Taylor v. United States, 495 U.S. 575, 581 n.3 (1990) (quotation omitted); see also 3 W. LaFave, Substantive Criminal Law § 21.1 (2d ed. 2016) (explaining that common law burglary found its theoretical basis in the protection of the right of habitation); J. Suk, Criminal Law Comes Home, 116 Yale J. L. 2, 23 (2006) ("The invasion of the home constituted the violation of a right so basic that it was thought to be grounded in natural law . . . The violation of the 'right of habitation' was a fundamental violation, as there could be nothing 'more sacred, more inviolate' than a person's home.").

¶ 20. Rather than being inconsistent with the singular common law policy of protecting the right of habitation, § 1201 simply expands upon that goal. This is exemplified by the increased penalties for invasion of an occupied dwelling compared to generic buildings or structures. Section 1201(c)(1) provides the penalties for burglarizing a building or structure as imprisonment for not more than fifteen years and a fine of not more than $1000, or both. By contrast, the burglary of an occupied dwelling carries significantly steeper penalties, with the potential for not more than twenty-five years in prison and a fine of not more than $1000, or both.[5] § 1201(c)(3)(A). These graduating penalties reflect an enhanced desire to protect the right of habitation, while also recognizing and protecting degrees of privacy interests beyond pure habitation.

¶ 21. This is consistent with the evolution of burglary laws in other states. As the U.S. Supreme Court has recognized, "the contemporary understanding of 'burglary' has diverged a long

---

[5] If the intruder carries a dangerous weapon, the potential penalties increase to not more than thirty years in prison, and a fine of not more than $10,000, or both. 13 V.S.A. § 1201(3)(B).

8

way from its common law roots." Taylor, 495 U.S. at 593. What separates burglary from, for example, trespass and larceny, is not only intent of the intruder to commit a specified crime, but also the heightened expectation of privacy and security for the individual and property that attaches to buildings and structures as compared to open land. The California Court of Appeals explained, in considering a related but distinct issue, that "[t]he proper question [under a burglary statute] is whether the nature of a structure's composition is such that a reasonable person would expect some protection from unauthorized intrusions." People v. Nible, 247 Cal. Rptr. 396, 399 (Ct. App. 1988). The issue in Nible was whether an intruder's penetration of the air space within a window frame, but not the plane of the window itself, constituted a burglarious entry. The court noted:

> A structure with a locked door or window clearly affords a reasonable expectation of protection from invasion. But even an open door or window affords some expectation of protection from unauthorized intrusion because reasonable persons understand the social convention that portals may not be crossed without permission from the structure's owner.

Id.; see also State v. Moler, 2 P.3d 773, 778 (Kan. 2000) ("In the burglary statute, the enumerated items are intended to present a barrier to entry, which in turn provide an enclosed space for the security of persons or property which may be contained therein."); State v. Office of Public Defendant ex rel. Muqqddin, 285 P.3d 622, 632-33 (N.M. 2012) (explaining that burglary statute is designed to protect "the right to exclude others" and privacy interest arising from this right, and that nature of enclosure at issue, creates requisite expectation of privacy). The edifice at issue in this case, with or without a roof, gives rise to the heightened expectation of privacy and exclusion that the burglary statute seeks to protect.

¶ 22. We quickly dispense with defendant's argument that an expansive reading of "structure" creates impermissible overlap between statutes covering the same wrongdoing. The Legislature can, and often does, enact criminal statutes with overlapping elements, leaving discretion to prosecutors to choose which to apply in a particular case. See State v. Perry, 151 Vt.

637, 640, 563 A.2d 1007, 1010 (1989) ("It is within the prosecutor's discretion to determine which overlapping criminal offenses established by the facts should be charged, and we will not interfere with the exercise of this discretion without a statement by the legislature that such an infringement is intended.").[6]

¶ 23.   We also disagree with defendant's argument that, by instructing the jury that "a building or structure can exist without a roof and without being closed in," the court relieved the State of its burden of proving beyond a reasonable doubt that the construction project was a "building or structure." The court specifically instructed the jury that it had to find that defendant "entered a building or structure." It told the jury that a building or structure "encloses a space within its walls," and that it is "usually but not necessarily covered with a roof and otherwise closed in." These instructions framed the legal definition of "building or structure" to guide the jury's assessment of whether this element was satisfied, but left the question whether defendant had entered a "building or structure" to the jury.

## II.  Sufficiency of the Evidence

¶ 24.   In considering whether the State presented sufficient evidence of the elements of (1) defendant's entry into (2) a "building or structure," "we review the evidence presented by the State viewing it in the light most favorable to the prosecution and excluding any modifying evidence and determine whether that evidence sufficiently and fairly supports a finding of guilt beyond a reasonable doubt." State v. Albarelli, 2011 VT 24, ¶ 17, 189 Vt. 293, 19 A.3d 130 (quotation omitted).  We evaluate "the strength and quality of the evidence; evidence that gives rise to mere suspicion of guilt or leaves guilt uncertain or dependent upon conjecture is insufficient." Id. (quotation omitted).  Circumstantial evidence can sustain a conviction "if it is

---

[6] We need not consider whether defendant could properly have been convicted of burglary, petit larceny, and trespass for his conduct in this case.  He was not convicted of all three offenses, and has made no claim of a double jeopardy violation.  See State v. Wiley, 2007 VT 13, ¶ 8, 181 Vt. 300, 917 A.2d 501 (describing law applicable to double jeopardy claim).

sufficient to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Miller, 146 Vt. 164, 169, 502 A.2d 832, 835 (1985).

¶ 25. We conclude that the evidence viewed in a light most favorable to the State supports a finding, beyond a reasonable doubt, that defendant actually entered the structure to remove the material. To begin, the project manager who was on site the day before the incident testified that the material was stored in the stairwell, inside of the structure. The manager testified that it was highly improbable that any employee moved the material over the course of the next day: the material was heavy, would have been in the way of the ongoing roofing project, and would have been ruined if left in direct sunlight. He explained that it was company policy not to place the material outside, everyone on the site knew of this policy, and no one directed any employee otherwise. Moreover, the jury's finding that the material was inside of the house is consistent with the eyewitness testimony that defendant moved the materials from a location by the house to the porta potty before his cousin pulled in to load the materials. This circumstantial evidence was sufficient to support the inference that defendant removed the materials from inside the structure, and the jury was free to disbelieve defendant's testimony that the materials were left on the grass outside and that he never entered the structure. See State v. Couture, 169 Vt. 222, 226, 734 A.2d 524, 527 (1999) ("We have long recognized that judging the credibility of witness testimony is a duty left to the jury.").

¶ 26. Defendant's argument that the State failed to prove that the construction project was a "building or structure" under the burglary statute rises and falls with his challenge to the jury instructions. For the reasons set forth above, the partially constructed house could constitute an enclosure despite the absence of a roof, windows, and doors. The State presented evidence that the house under construction had framed walls with Tyvek wrapping on the exterior, roof dormers but not rafters, a constructed first and second floor, and window and door openings without glass or actual doors. On the basis of this evidence, the jury reasonably could have concluded that the

11

partially constructed house constituted an enclosure, or "structure" within the definition provided by the trial court.

    <u>Affirmed</u>.

FOR THE COURT:

_____
Associate Justice
