Filed 06/27/25



VERMONT SUPERIOR COURT
Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 23-CV-01864

Justin Tiedemann v. Bernard Wheeler, et al

## DECISION OF POST-TRIAL MOTIONS

This matter was tried by a jury at the end of April 2025. At the close of Plaintiff's evidence, the court granted judgment for Defendants pursuant to V.R.C.P. 50 on Plaintiff's claim of failure to give aid. The jury returned a verdict for the Plaintiff on his claim for negligence, but found him 40% at fault. The jury awarded Plaintiff $59,372 in economic damages and $5,000 in non-economic damages. On May 23, 2025, Plaintiff filed three motions: 1) a motion for additur or a new trial under V.R.C.P. 59(a); 2) a motion for judgment or a new trial under V.R.C.P. 50(b); and 3) a motion for a new trial on Plaintiff's claim for failure to give aid. On May 27, 2025, Defendants file two motions: 1) A motion for judgment and 2) A motion for costs. The parties filed responses and replies to the motions. For the following reasons, all motions are DENIED.

### Statement of Facts and Procedural History

The court considers the following evidence in the light most favorable to the jury's verdict. *Gregory v. Vermont Traveler, Inc.,* 140 Vt. 119, 121 (1981).

Plaintiff worked for FedEx Express as a courier for approximately six months. The job entailed unloading a truck from Albany, loading his truck with packages, and making deliveries. When Plaintiff failed to deliver all of his packages on a specific day, he would be required to make up those deliveries the following morning. Plaintiff would scan packages when loading them onto his truck and would scan them again upon delivery.

On March 3, 2021, Plaintiff delivered a package to Defendants' house in Belmont, Vermont. Plaintiff had delivered to the residence on two prior occasions and left the packages by the grill located next to the garage. It had snowed the night before. Bernard Wheeler typically snowblowed the driveway and walkway from the driveway to the front door. The walkway goes past the area where the grill was located. The Defendants' residence is located in a snowy and windy area and wind sometimes blows the snow across areas already cleared by Mr. Wheeler. Mr. Wheeler cleared the walkway in front of the grill the morning of March 3, 2021. Located in front of the grill was a white board that blended into the snow, but had sufficient height that it would have been noticeably different than the surrounding area. Mr. Wheeler did not see the board when he cleared the walkway that morning.

Plaintiff delivered his package to the Defendants' residence around 11:00 a.m. Plaintiff backed into a turnaround with his truck, exited and retrieved the package. Plaintiff walked towards the grill area holding the package in both hands. Plaintiff was taught to look around a delivery area for debris before

delivering. Upon reaching the grill area, Plaintiff stepped on the white board and fell to the ground. Plaintiff did not realize what caused the fall until looking at pictures of the site later that day. This fall resulted in a broken ankle and Plaintiff rolled around on the ground for a bit yelling in pain. Mrs. Wheeler, although working from home, did not hear nor see Plaintiff fall. Plaintiff made it back to his truck and drove back to FedEx, stopping once to make a telephone call.

Plaintiff's injury resulted in a straightforward surgery. The surgery consisted of hardware being installed in Plaintiff's ankle in order to stabilize it. The hardware was subsequently removed in a second surgery. That second surgery showed no signs of damage to his cartilage. Damage to cartilage can result in arthritis years down the road. Plaintiff was expected to recover 100% from this injury. During the recovery period, Plaintiff did experience pain and suffering and was not able to enjoy the activities he normally enjoyed, such as hiking and snowboarding.

### Plaintiff's Motion for Additur or New Trial Pursuant to V.R.C.P. 59(a)

Rule 59(a) allows the court to grant a new trial "for any of the reasons for which new trials or rehearings have heretofore been granted…A new trial shall not be granted solely on the ground that the damages are inadequate until the defendant has first been given an opportunity to accept an addition to the verdict of such amount as the court deems to be reasonable." The court cannot set aside the jury's verdict "[u]nless the verdict is shown to be clearly erroneous, or that the jury disregarded the reasonable and substantial import of the evidence, or found against it because of passion, prejudice, or some misconception of the matter . . . ." *Newkirk v. Towsley,* 134 Vt. 237, 238 (1976). Plaintiff raises several issues in his motion. Each will be addressed separately.

#### Compromise Verdict

Plaintiff argues the verdict should be set aside as a compromise verdict. "A damage verdict may be vacated if there is evidence that the jury compromised." *Epsom v. Crandall,* 2019 VT 74, ¶ 21 (citation omitted). "A compromised verdict results when some jurors surrender conscientious convictions on one issue in return for a similar surrender by other jurors on another issue." *Fournier v. Loiselle's Estate,* 136 Vt. 601, 602 (1974). The Vermont Supreme court has held:

> The threshold determination in considering whether a verdict has been compromised, however, is whether the jury could reasonably have calculated the damages awarded on the evidence presented and we will not interfere unless it appears that the jury's determination is so small that it plainly indicates the award was the product of prejudice or other misguidance which undermines its validity as a verdict.

*Id.* (citations and quotations omitted). The "standard rule for tort damages is that plaintiffs must prove, by a preponderance of the evidence, the extent and nature of their damages. Plaintiffs must further show that such damages are the direct, necessary, and probable result of defendant's negligent act." *Langlois v. Town of Proctor,* 2014 Vt 130, ¶ 45 (citations and quotations omitted). The question is whether the jury could reasonably have found the Plaintiff only proved $5,000 in non-economic damages.

In *Smedberg v. Detlef's Custodial Service, Inc.,* 2007 VT 99, the Vermont Supreme Court reversed the trial court's denial of a motion for new trial due to a compromised verdict. In *Smedberg,* the Court determined there was no plausible explanation for the jury awarding economic damages for back and neck injuries, but not awarding any non-economic damages for pain and suffering. *Id.* at ¶ 9. The facts of

*Smedberg* are distinguishable from the facts here. The jury here awarded $5,000 in non-economic damages. This is consistent with the testimony of the Plaintiff, Mary Emilius, and Sandra Deane regarding the pain Plaintiff suffered during recovery. There was, however, competing testimony about future pain and suffering. Defendants' expert, Dr. O'Neil, testified that surgery was straightforward, and he expected a 100% recovery. He saw no signs of ongoing issue in the records he reviewed. Plaintiff's expert, Dr. Bucksbaum testified Plaintiff suffered a loss of range of motion to his ankle that was a permanent condition and he was likely to develop arthritis as a result. Dr. O'Neil is an orthopedic surgeon while Dr. Bucksbaum is a physiatrist. When there is conflicting testimony, the jury is "free to make its own determinations about the witnesses and the credibility of their competing testimonies." *State v. Menize,* 2023 VT 48, ¶ 53. The court "will not second-guess the jury's determination of credibility" and cannot find that the jury's verdict was unsupported by the evidence or the result of a compromise. *State v. Hinchliffe,* 2009 VT 111, ¶ 22.

Plaintiff raises several additional arguments that the jury's verdict was compromised. First, Plaintiff argues the fact one juror gave another juror a joke gift card during the trial resulted in discord. The court asked the jury if that impacted their ability to sit fairly and no juror raised their hand. The court asked the parties if they wanted any additional voir dire and Plaintiff did not ask for any additional voir dire or ask for the juror to be excused. Plaintiff waived any claim of error by failing to voice an objection at that time.

Plaintiff argues there were reports that jurors could be heard shouting at each other in the jury room. The court was not aware of such reports and Plaintiff did not raise that issue with the court during trial. At one point, the jury asked to see the testimony of two witnesses. The court sent a note back to the jury indicating testimony could only be replayed and asked them whether they wanted the testimony replayed. The jury did not respond. Plaintiff argues this shows discord. The court disagrees. The court cannot infer any fact or reason for the jury's failure to respond to the court's question. Further, a juror's request to make a phone call to arrange for childcare does not indicate discord or compromise. Neither did the jury's question regarding instructions indicate discord or compromise. Plaintiff alleges the jurors appeared teary-eyed and upset. The court did not make these observations and Plaintiff did not raise them with the court. Plaintiff finds fault with the court not polling the jury after the verdict. Unlike the Criminal Rules of Procedure, the Civil Rules of Procedure do not authorize polling of juries after verdict. *See* V.R.C.P. 49; V.R.Cr.P. 31. The court does not find that the verdict reached by the jury was the result of compromise. Given this determination, additur is not warranted. *See Hoague v. Cota,* 140 Vt. 588, 593 (1982) (Additur is a "practice of conditioning denial of the plaintiff's motion for a new trial on the defendant's agreement to a reasonable additur").

*Jury Instructions Regarding Premise Liability*

Plaintiff argues a new trial is warranted because the court erred in instructing the jury on premises liability. Jury instructions must accurately state the law on every claim brought by a party. *State v. Snow,* 2013 VT 19, ¶ 8. "When reviewing jury instructions, we look at the instructions as a whole to determine whether they capture the true spirit and doctrine of the law." *Irving v. Agency of Transp.,* 172 Vt. 527, 530 (2001) (citations and quotations omitted). In addition, the Vermont Supreme Court "'will assign error only where the instructions undermine our confidence in the verdict.'" *Id.* (quoting *State v. Shabazz,* 169 Vt. 448, 450 (1999)). There was no error in the court's instructions.

Plaintiff takes issue with the court's instructions regarding the duties of a property owner. Plaintiff argues that the court's instruction that "the Wheelers knew or should have known that such an

unreasonably dangerous or unsafe condition existed" is inconsistent with the Restatement (Second) of Torts § 343, which states "knows or by the exercise of reasonable care would discover the condition." Plaintiff fails to acknowledge the court's full instructions on this issue:

> you must determine whether the Wheelers knew or should have known of the allegedly dangerous or unsafe condition, or the risk of that condition, based on the totality of the circumstances that existed at the time Mr. Tiedemann was injured.

> There is no amount of time which a dangerous condition or risk must exist before the property owner should discover it and take action. Vermont law requires that a property owner exercise reasonable care to discover the dangerous condition. A property owner has a duty to take action to eliminate a risk of harm or make a dangerous condition safe when the condition or risk is foreseen by the owner, or where the owner could have foreseen an unreasonable risk of harm to invitees, if the owner had conducted herself or himself as a reasonably prudent property owner would have.

Final Jury Instructions, p. 7-8. The court specifically instructed the jury that Vermont law requires a property owner to exercise reasonable care to discover a dangerous condition. The court's instructions accurately stated the law and were not confusing.

*Defense Counsel's Closing Argument*

Plaintiff argues defense counsel's closing arguments misstated the law. Ordinarily, objections to opposing counsel's closing argument require an immediate objection. *Deyo v. Kinley,* 152 Vt. 196, 201 (1989). Plaintiff waited until the end of closing arguments to make any objection. Assuming the objection was not waived for untimeliness, the court's subsequent instruction cured any such error if it existed. The court instructed the jury, "although the attorneys did summarize the law for you in their closing arguments, **the law you have to follow is the ones I'll be instructing you on.**" 5/1/25 Tr., p. 43 (emphasis added). Plaintiff did not raise any concerns with this curative instruction at the time it was given. In addition, the court instructed the jury that "the opening and closing statements of the attorneys, and other statements that they made during the course of the trial are not evidence." Final Instructions, p. 2. These instructions adequately cured any error that might have been made in defense counsel's closing argument.

Plaintiff also argues defense counsel misstated the evidence in closing arguments. Plaintiff's arguments were waived as no timely objections were made on this point. *Deyo,* 152 Vt. at 201. Setting that aside, defense counsel's comments do not rise to the level where a new trial is warranted. It has been a long-standing rule that counsel is required to confine their closing arguments to the evidence, inferences properly drawn therefrom, and avoid appealing to the prejudice of the jury. *Duchaine v. Ray,* 110 Vt. 313 (1939). Plaintiff argues defense counsel improperly told the jury Dr. O'Neill had all the records when it was disputed whether Dr. O'Neill reviewed all the records available. As Plaintiff correctly points out, statements by counsel are not evidence, including statements by Plaintiff's counsel regarding what constitutes all the records. Furthermore, there is nothing improper about arguing there was no proof. Plaintiff testified he didn't know what caused the injury until after looking at photographs. A reasonable inference could be he didn't know where the injury occurred. Defense counsel's arguments were not so beyond the pale that a new trial is warranted.

*Jury Instruction Regarding Insurance*

Jury instructions must accurately state the law on every claim brought by a party. *State v. Snow,* 2013 VT 19, ¶ 8. Plaintiff argues the court erred in prohibiting the jury from considering whether any insurance coverage existed. The Vermont Supreme Court "has traditionally held that the deliberate injection of insurance into a case in order to prejudice a jury and benefit a litigant is normally reversible error since the existence of insurance is an immaterial fact … This rule applies with equal force to the introduction of the absence of insurance coverage." *Hardy v. Berisha,* 144 Vt. 130, 135 (1984) (citations and quotations omitted). It would therefore be improper to inform the jury of the existence of the workers' compensation award to Plaintiff. There are exceptions to the general rule that the jury should not hear about insurance. *Id.* These exceptions include "when the reference to insurance is inextricably involved in a defendant's admission of liability" and "when the fact of insurance is relevant on the issue of a witness' interest in the outcome of the litigation." *Id.* The existence of Plaintiff's workers' compensation award does not fall under either of these exceptions.

Plaintiff argues that defense counsel's reference to workers' compensation in her closing argument warrants a new trial. The court disagrees. Although defense counsel's reference to the standard in a workers' compensation case during closing was ill-advised, a new trial is not warranted as it was so oblique that any prejudicial effect was minimal. *Joslin v. Griffith,* 125 Vt. 104, 106-07 (1965) (when reference to insurance is "oblique or obscure, making little impression on the jury, or when the posture of the case makes it apparent that the prejudicial effect will be minimal" a mistrial is not warranted).

Plaintiff's motion is therefore DENIED.

### Plaintiff's Motion for New Trial Pursuant to V.R.C.P. 50(b)

In this motion, Plaintiff renews his motion for judgment as a matter of law regarding liability. In determining a motion for judgment as a matter of law under V.R.C.P. 50(b), the court "must review all the evidence in the light most favorable to the nonmoving party, excluding the effect of modifying evidence. Modifying evidence is that evidence which the jury is free to disbelieve because of questions about its credibility." *Monahan v. GMAC Mortg. Corp,* 2005 VT 110, ¶ 2 (citations omitted). In applying this standard to the evidence of the case, Plaintiff's motion must be denied.

Taking the evidence in the light most favorable to the Defendants, Mr. Wheeler cleared off the walkway leading to the grill area the morning of March 3, 2021. He observed no obvious debris in the walkway area and didn't see the white board. When Plaintiff delivered the package to the Wheeler's residence, he had no explanation as to why he fell. He testified he did not see what he stepped on that caused him to fall. There was no footprint on the board and Plaintiff didn't put two and two together until he saw photographs. "Common law negligence has four elements: a legal duty owed by defendant to plaintiff, a breach of that duty, actual injury to the plaintiff, and a causal link between the breach and the injury." *Demag v. Better Power Equipment, Inc.,* 2014 VT 78, ¶ 6. "Whether a defendant is negligent depends on whether his or her action was objectively reasonable under the circumstances; that is, the question is whether the actor either does foresee an unreasonable risk of injury, or could have foreseen it if he conducted himself as a reasonably prudent person." *Endres v. Endres,* 2008 VT 124, ¶ 13 (citations and quotations omitted). Taking the evidence in the light most favorable to the Defendants, the Wheelers were not negligent. Mr. Wheeler cleared the snow from the area where the delivery occurred and there was no foreseeable risk of injury to a courier. Mr. Wheeler demonstrated a reasonable exercise of care to discover any dangerous conditions and did not find any. Plaintiff is not entitled to judgment as a matter of law and the motion must be DENIED.

23-CV-01864 Justin Tiedemann v. Bernard Wheeler, et al

<u>Plaintiff's Motion for New Trial On Plaintiff's Claim For Failure To Give Aid</u>

At trial, the court granted Defendants' motion for judgment as a matter of law on Plaintiff's claim for failure to give aid. In this motion, Plaintiff moves pursuant to V.R.C.P. 50(c)(2) and 59 for a new trial on this claim. Plaintiff's motion for a new trial must be denied as Plaintiff did not "produce[ ] evidence that fairly and reasonably supports all elements of the disputed claims." *Monahan,* 2005 VT 110, ¶ 2; V.R.C.P. 50(a).

In deciding a motion for judgment as a matter of law, the court must "consider the evidence in the light most favorable to the nonmoving party and afford the nonmoving party every reasonable inference that may be drawn from it." *Driscoll v. Wright Cut and Clean, LLC,* 2024 VT 49, ¶ 6 (quotation omitted). The motion must be granted when there is insufficient evidence for a reasonable jury to find for the nonmoving party and where "the claim would require the jury to rely on conjecture, surmise, or suspicion." *Id.* (quotation omitted).

Plaintiff brought a claim for failure to render aid in this matter. The Vermont Supreme Court has cited to the Restatement (Second) of Torts with approval for the duties of property owners. *See e.g. O'Connell v. Killington, Lt.,* 164 Vt. 73, 77 (1995). Section 314A of the Restatement (Second) articulates the duties of an individual to render aid. The illustrations made in the Restatement make clear that an element of failure to render aid requires an aggravation of injuries received due to the underlying negligence of either party. Restatement of Torts § 314A (1965). For example, the first illustration involves a railroad passenger negligently falling off a train and the train crew becoming aware of the fall, but doing nothing. *Id.* The railroad company has a duty to render aid, but is only liable for the aggravation to the injuries caused by the failure to render aid. *Id.* Plaintiff failed to present any evidence of aggravation due to Mrs. Wheeler's alleged failure to render aid. Although Plaintiff is entitled to all reasonable inferences from the evidence, the claim cannot rely on conjecture, surmise, or suspicion. *Driscoll,* 2024 Vt 49, ¶ 6. There was no expert testimony regarding any aggravation to Plaintiff's injury because he either hopped or limped 50 feet to his truck. Neither did Plaintiff testify there was any increase in his pain levels, assuming that counts as aggravation, as a result of these actions. The jury would have been left to speculate as to any facts that would support a finding Plaintiff's injury was aggravated by Mrs. Wheeler's failure to render aid. As such, Plaintiff's motion must be DENIED.

<u>Defendants Motion for Judgement as a Matter of Law and Motion for Costs</u>

On May 27, 2025, Defendants filed a motion for judgment as a matter of law and a motion for costs. Defendants' motions are denied as untimely. After the jury returned their verdict, the court asked the parties if they intended to file any post-trial motions. Defendant's counsel indicated they did not intend to file any such motions. Plaintiff's counsel indicated they may file post-trial motions. The court imposed a deadline of May 23, 2025 for any post-trial motions to be filed. Defendants filed their motion after this deadline. Neither did the Defendants file a motion to extend the deadline pursuant to V.R.C.P. 6(b). As such, the motions are DENIED as untimely.


Electronically signed on June 26, 2025 pursuant to V.R.E.F. 9(d)

*Alexander N. Burke*
_____
Alexander N. Burke
Superior Court Judge