2004 VT 96

**STATE of Vermont v. Alvin AIKEN**

[862 A.2d 285]

No. 03-126

¶ 1. September 23, 2004. Defendant Alvin Aiken appeals his conviction for grossly negligent operation of a motor vehicle. Defendant claims that the trial court erred by advising the jury, in response to a jury question during deliberations, that the gross negligence charge did not refer to the specific conduct described in the information, but rather to defendant's conduct generally while operating his vehicle on the day in question. We reverse and remand.

¶ 2. Defendant's conviction arose from his encounter with state game wardens George Scribner and Robert Lutz. During the evening of August 29, 2002, the game wardens responded to a complaint that someone was spotting deer in a field. The complaint mentioned a reddish colored pickup truck with two people in it. As the wardens proceeded to the reported site, a red pickup driven by defendant passed their vehicle going in the opposite direction. Warden Lutz turned his vehicle around and followed the pickup. He turned on the vehicle's blue lights and

briefly activated the siren. The pickup accelerated, and the wardens continued the pursuit on dirt roads, at speeds of up to sixty-five miles per hour. Warden Scribner repeatedly instructed defendant to stop through the truck's public address system, but defendant continued on, his pickup fish-tailing, and the back end of the vehicle bouncing completely off the ground as it sped down the dirt road. When the pickup spun around and headed towards the wardens' vehicle, warden Lutz tried to force defendant off the road by hitting the back end of the truck. The pickup went into a ditch, but defendant was able to drive out of it. After a further chase, warden Lutz backed off from active pursuit, but continued following the vehicle's tracks on the wet dirt.

¶ 3. Eventually, the wardens followed defendant to a narrow dead end road, the Jones Road. Defendant's vehicle had turned around and was slowly approaching the wardens' vehicle. Warden Lutz placed his vehicle in a manner that he hoped would block the pickup's way. Nevertheless, as the wardens were getting out of their truck, defendant accelerated and passed the wardens' vehicle on the driver's side. According to warden Lutz, the pickup passed within inches of him, forcing him to run to get out of the path of the vehicle. Warden Lutz then fired a shot at the right rear tire of the truck.

¶ 4. Using the pickup's plate number, the wardens located defendant at his home. Defendant admitted that he was the driver of the truck and was arrested. Defendant was charged with grossly negligent operation, reckless endangerment, and failure to stop for a game warden. The information on count I, the grossly negligent operation charge, alleged that defendant "operate[d] a motor vehicle . . . in a grossly negligent manner, to wit, drove his truck within inches of Warden Lutz, in violation of 23 V.S.A. § 1091(b)."

Similarly, count II alleged that defendant "recklessly engaged in conduct which may place another in danger of serious bodily injury, to wit, accelerated his truck toward Warden Lutz and nearly hit him, in violation of 13 V.S.A. § 1025." The information on count III, failure to stop for a warden, merely cited the pertinent statute, 10 V.S.A. § 4521(a), without setting forth any specific conduct.

¶ 5. At trial, defendant testified that he initially did not stop for the warden because he was free under conditions of release and had no driver's license. Defendant further stated that when he saw the wardens' truck approaching his pickup on Jones Road, he sped up and passed it because he was afraid that warden Lutz would hit his pickup as he had done earlier in the chase. Defendant asserted that when he drove past the wardens' truck on Jones Road warden Lutz was still in the driver's seat and the truck was still moving. Jennifer Cole, who was a passenger in the pickup during the chase, also testified that warden Lutz was still in his vehicle when defendant drove by the wardens' truck. Warden Scribner testified that he did not see how close the pickup came to warden Lutz or where Lutz was when defendant passed the truck.

¶ 6. In their closing arguments, both parties focused on the moment when defendant drove past the wardens' truck on Jones Road. The prosecutor asked the jury to consider the nature of the action that defendant was charged with —"driving at the driver's side of the warden's vehicle at the warden after warden Lutz had gotten out." Defendant conceded his guilt on the charge of failure to stop for a game warden, but disputed that he had put the warden at risk. Citing testimony that questioned whether warden Lutz was outside the truck when defendant passed him on Jones Road, defense counsel asked the jury: "Was [the warden] outside of the truck? Was he inside

the vehicle when it was coming? How close was he to it [?] Did [defendant] see him there?" Defense counsel stated that the focus "has to be right there on the two vehicles." Moreover, defense counsel emphasized to the jury that the alleged gross negligence was that defendant drove at warden Lutz, and therefore "[y]ou [the jury] have to find that he perceived a risk to warden Lutz and ignored that risk."

¶ 7. The trial court instructed the jury as follows on the charge of grossly negligent operation: "[T]he State's Attorney alleges that [defendant] ... operate[d] a motor vehicle on a public highway, to wit, Jones Road, in a grossly negligent manner, to wit, drove his truck within inches of warden Lutz." Nevertheless, during its deliberations, the jury sent out the following written question: "Count I. 'in a grossly negligent manner' Does this refer specifically to the activities on Jones Rd. (To wit: driving within inches of Officer Lutz)?" In response to the trial court's request for comment, defense counsel stated, "the information was specific ... and that was the thrust of the State's case." The prosecutor agreed, commenting, "the to wit gives the notice to the defendant what actions we are alleging violate the statute, so I think I would have to say that the answer to the jurors' question is yes." Despite the parties' agreement, the trial court stated that "the jury need not confine itself to the language specifically in the information." Accordingly, the court answered the jury question in the negative, advising the jury that the grossly negligent count referred to defendant's conduct generally in operating his vehicle.

¶ 8. Shortly after the court answered the question, the jury returned a guilty verdict on the charge of grossly negligent operation and a not guilty verdict on the reckless endangerment charge. The jury also found defendant guilty of failing to stop for a warden, a charge not contested

by defendant. Defendant moved for a new trial, citing as error the court's answer to the jurors' inquiry. The trial court denied the motion, relying on an unpublished memorandum decision of a three-justice panel of this Court holding that descriptive language added to an information does not necessarily add an essential element to the offense charged. See *State v. Belisle*, No. 99-080 (Nov. 24, 1999). In its written decision and order, the trial court rejected defendant's argument that it effectively permitted an amendment of the information. According to the trial court, "[t]he real question raised by the Defendant is whether the information gave him notice that evidence of the entirety of his operation of his vehicle during the pursuit ... could be considered by the jury." The trial court reasoned that the information, read in connection with the affidavit of probable cause, fully advised defendant of the charged conduct. The trial court further stated that defendant did not complain that he was surprised by the State's evidence because "[i]f nothing else he was required to deal with evidence of the chase in connection with [the attempt to elude the warden charge]." This appeal followed.

¶ 9. On motion of a defendant, the court may grant a new trial if required "in the interests of justice." V.R.Cr.P. 33; *State v. Turner*, 2003 VT 73, ¶ 11, 175 Vt. 595, 803 A.2d 122 (mem.). "The standard is intentionally broad so that the courts can ensure that trials are fair without necessarily having to pigeonhole the grounds into narrow and specific findings of error." *State v. Heath*, 162 Vt. 618, 619, 649 A.2d 243, 244 (1994) (mem.). The court may grant a new trial if it believes that the cumulative effect of numerous concerns, no one of which can be characterized as reversible error, amounted to a miscarriage of justice. *Id.* at 619, 649 A.2d at 244. Although the decision to grant the motion is "normally entrusted

to the discretion of the trial court," *State v. McKeen*, 165 Vt. 469, 472, 685 A.2d 1090, 1092 (1996) (citing *State v. Jewell*, 150 Vt. 281, 284, 552 A.2d 790, 792 (1988)), this Court will reverse upon a showing that the trial court abused or withheld its discretion, or exercised it on untenable grounds. See *State v. Briggs*, 152 Vt. 531, 542, 568 A.2d 779, 785 (1989).

¶ 10. The function of the information is to "set forth charges with such particularity as will reasonably indicate the exact offense the accused is charged with, and will enable him to make intelligent preparation for his defense." *State v. Christman*, 135 Vt. 59, 60, 370 A.2d 624, 625 (1977) (citations omitted). We agree with the trial court that, "[t]o the extent that there is ambiguity in the information, reference may be had to the affidavit of probable cause." Thus, ordinarily, we would not allow a defendant to claim surprise or inability to prepare an adequate defense merely because the information is missing details that can be ascertained easily by reading the accompanying affidavit. See *id.* at 62, 370 A.2d at 626 (affirming denial of motion for new trial where alleged amendment provided only additional details as to location of defendant's conduct); *State v. Burclaff*, 138 Vt. 461, 465, 418 A.2d 38, 41 (1980) (affirming denial of motion for new trial where alleged amendment resulted from correction of minor typographical error in original charging document).

¶ 11. Moreover, we recognize that grossly negligent operation can involve a continuous course of conduct encompassing numerous individual acts, and that a prosecutor is not required to set forth in the information every nuance of defendant's conduct described in the affidavit of probable cause. Here, however, the information narrowed and specified the conduct for which defendant was being charged. Thus, this case is not a situation where the information was vague or ambiguous and the accompanying affidavit provided the specifics of the conduct underlying the charge. Rather, here, the State's information and its actions at trial led defendant to believe that the underlying conduct forming the bases of both the grossly negligent operation charge and the reckless endangerment charge was defendant driving his truck at warden Lutz on Jones Road. The State was not required to confine itself in this way, but that is what it chose to do. Further, the fact that the accompanying affidavit described separate conduct for which defendant could have been charged with grossly negligent operation — driving on dirt roads at speeds so high that he had trouble controlling his truck — did not put defendant on notice that the grossly negligent charge was based on that conduct, given the narrow conduct cited in the information. Defendant could have reasonably assumed that the additional conduct cited in the affidavit concerning his attempts to elude the wardens was directed at the third charge of failing to stop for a warden.

¶ 12. In addition to the grossly negligent operation charge, defendant faced a reckless endangerment count alleging that he accelerated his vehicle towards the warden and nearly hit him. The similarity between the specific conduct alleged in these two charges suggests that the State's strategy prior to trial was to focus the case on defendant's act of driving by or at warden Lutz, seeking at a minimum to secure a conviction for grossly negligent operation in the event the jury could not be persuaded that defendant acted with the requisite mens rea for reckless endangerment. In fact, it is clear from the record that, prior to the trial court's intervention, both parties assumed that the "to wit" wording resolved any possible uncertainty regarding the specific conduct underlying those charges. At trial, in response to the court's question concerning the jury's note, the prosecutor acknowledged that the spe-

cific conduct described in the information charging defendant with grossly negligent operation was that he drove "within inches of Warden Lutz." In light of the State's apparent understanding of the wording of the information, and given the context in which the charges were brought, we do not believe that defendant could have reasonably anticipated that the grossly negligent operation charge involved conduct other than the specific allegation contained in the information.

¶ 13. The three-justice-panel decision relied upon by the trial court in concluding that the grossly negligent operation charge was not limited to the conduct contained in the information is not controlling precedent and, in any event, is distinguishable from the instant case. There, the information charged the defendant with grossly negligent operation, "to wit, travelling at excessive speed while racing with another vehicle." See *Belisle*, No. 99-080, at 2. The defendant argued that the trial court erred by failing to instruct the jury that the prosecution had to prove, as an essential element of the crime, that he had the intent to race. We held that the phrase "while racing with another vehicle" was merely descriptive of the defendant's conduct and did not add an essential element to the charged offense. *Id.* By contrast, as the prosecutor in this case acknowledged at trial, the phrase "drove within inches of Warden Lutz" was not meant to be merely a descriptive phrase, but rather was intended to specify the underlying conduct that formed the basis of the charge. In short, given the specific language of the information in this case, the trial court erred by telling the jury that the charge of grossly negligent operation referred to conduct other than that cited in the information.

¶ 14. Further, defendant's ability to prepare and present his defense was substantially prejudiced by the court's ruling. Because of the "to wit" wording, defense counsel focused on the specific facts alleged in the information, vigorously contesting the claim that defendant had driven dangerously close to warden Lutz. Defendant's theory of the case was that the warden was still in his vehicle when defendant passed by. By suggesting to the jurors that they could consider other conduct in evaluating the grossly negligent operation charge, the trial court effectively negated defendant's and other witnesses' testimony regarding the events at Jones Road — an important part of defense counsel's strategy. In responding to the jurors' inquiry, the trial court should have considered the context in which the charges were brought, and the fact that both parties, by the State's own admission, had tried the case with the understanding that the specific conduct that constituted the offense was that defendant drove dangerously close to the warden. Furthermore, unlike the situation where an information is amended during trial, here the reinterpretation of the information came at the end of the trial, thereby leaving defendant without an opportunity to adapt his defense to the new charge. Defendant's ability to prepare and present his defense was so substantially prejudiced that a new trial is required "in the interests of justice." V.R.Cr.P. 33. Although the trial court has discretion in determining whether a new trial is warranted, *Jewell*, 150 Vt. at 284, 552 A.2d at 792, the court's denial of defendant's motion under the circumstances of this case amounted to an abuse of discretion.

*Defendant's conviction for grossly negligent operation of a motor vehicle is reversed, and the case is remanded to the trial court for a new trial on the grossly negligent operation count.*

Note: Chief Justice Amestoy sat for oral argument but did not participate in this decision.