2012 VT 37

# State of Vermont v. Robert Kolibas

[48 A.3d 610]

No. 10-254

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed May 17, 2012

*Thomas Donovan, Jr.*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Anna Saxman*, Deputy Defender General, Montpelier, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant Robert Kolibas, convicted of lewd and lascivious conduct with a child and two counts of aggravated assault, claims the court, in its instructions to the jury, eliminated the element of intent from the State's burden of proving the aggravated assault charges. He is correct. We reverse and remand for a new trial on the two aggravated assault charges. Because defendant does not challenge his conviction for lewd and lascivious conduct, we do not disturb that conviction.

¶ 2. Defendant is the father of twelve-year-old A.K., who invited her thirteen-year-old friend, T.F., to a sleep-over date. That evening, defendant made blended fruit drinks known as "smoothies" for the two girls, his wife, and himself. At trial, defendant testified that he placed one Ambien (a sleep aid) and half of a Valium (an anti-anxiety medication) into his wife's drink because she was "stressed out" and he "didn't want her bothering [him]." Defendant's wife testified that after defendant left the

kitchen to bring two smoothies to the girls, she poured her part of her drink into defendant's cup.

¶ 3. The girls drank the smoothies as they lay on a futon in A.K.'s bedroom and watched a movie. T.F. testified that the smoothie did not taste normal and described what happened as follows. She soon felt dizzy and tired, and fell asleep in about thirty minutes. T.F. remembered waking up and seeing defendant in her room. She fell back asleep and woke to defendant touching her chest. She again fell back asleep and awoke as defendant pulled down her pants and touched her vagina. She fell back to sleep and awoke as defendant pulled her pants back up, kissed her on the cheek, and said, "I'm sorry" and "Don't tell anybody." She fell asleep for a final time, and when she awoke, called her mother to come pick her up.

¶ 4. T.F. and her mother immediately reported the incident to the police, who sent her to the hospital for a sexual assault evaluation and urine test. The following day, defendant's wife and daughter went to the hospital and submitted to urine testing as well. T.F.'s urine tested positive for benzodiazepine, a class of drug that includes Valium, and while the lab did not specifically test for Ambien, the test results strongly suggested Ambien was also ingested. Urine tests of A.K. and her mother were negative for benzodiazepine. The State ultimately charged defendant with lewd and lascivious conduct (L&L), 13 V.S.A. § 2602, for his acts upon T.F., and two counts of aggravated assault, 13 V.S.A. § 1024(a)(3), for drugging T.F. and A.K. The specific language of the aggravated assault counts charged:

> Robert J. Kolibas . . . for a purpose other than lawful medical or therapeutic treatment, intentionally caused stupor, unconsciousness, or other physical or mental impairment or injury to another person, *to wit*, *T.F.* . . . by administering to her, without her consent, a drug, substance or preparation capable of producing the intended harm, to wit, Diazepam [i.e., Valium] and Ambien, in violation of 13 V.S.A. § 1024(a)(3).

(Emphasis added.) The State charged the assault against A.K. identically.

¶ 5. While incarcerated awaiting trial, defendant sent his wife a letter in which he said he had put Valium and Ambien in her smoothie because he wanted her to relax and go to sleep. He

went on to say he got confused while making the smoothies, and "somehow I mixed up the damn smoothies and [T.F.] wound up with yours! Somehow it got into all the smoothies . . . even mine, it was all in the same blender." In the letter he explained that after the girls had gone to sleep, he heard noises upstairs and went to investigate and to collect the empty smoothie cups. Carrying a flashlight, he entered the girls' room and discovered that T.F.'s pants were off and she was masturbating. He claims he put T.F.'s pants back over her feet, and then she pulled them up herself. Finally, he wrote that he knelt down to tell her that he would not tell anyone what had happened, and T.F. tried to kiss him. He then left the room. Before trial, defendant moved to suppress the letter as a communication between husband and wife. The court denied the motion, holding that while the letter would normally be protected by the marital privilege, the exceptions found in Vermont Rules of Evidence 504(d)(2), (3), and (4) removed the letter from this privilege.[1] The letter was read into evidence.

¶ 6. Based on the expected defense contained in the letter — that A.K. and T.F. were drugged by mistake — the State sought to introduce testimony from six girls who were friends of defendant's daughters and who had previously slept over at defendant's house, consumed his smoothies, and felt dizziness or fatigue. The court permitted the witnesses to testify about prior incidents in order to rebut the claim of mistake or accident, a well-established exception to Vermont Rule of Evidence 404(b).[2] Defendant then testified, presenting his claim that he had intended to drug his wife, but that the girls were drugged by mistake.

---

[1] Rule 504(d) provides:

Exceptions. There is no privilege under this rule in a proceeding in which one spouse is charged with a crime, . . . against the person or property of (1) the other, (2) a child of either, (3) a person residing in the household of either, or (4) a third person in the course of committing a crime against any of them.

[2] Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶ 7. On the first day of trial, the court asked the parties if the doctrine of transferred intent was presented in the case and asked for briefing on the issue. Transferred intent is an ancient doctrine in which "we attribute liability to a defendant who, intending to kill (or injure) one person, accidentally kills (or injures) another person instead. The law 'transfers' the actor's state of mind regarding the intended victim to the unintended one." J. Dressler, Understanding Criminal Law § 10.04(A)(3)(a), at 132 (4th ed. 2006). Whether or not transferred intent should be adopted in Vermont and applicable under 13 V.S.A. § 1024(a)(3) is irrelevant to our decision because the State charged defendant with intentionally drugging T.F. and A.K.

¶ 8. In response to the trial court's request for briefing, the State asserted that the doctrine of transferred intent was not applicable to the aggravated assaults as charged in § 1024(a)(3) "because the stupefying-drugs subsection requires that a defendant's criminal intent — the purposeful causation of stupor and the like — be accomplished by administration of a substance 'to *the* other person,' which is to say, to the same, specific person defendant intends to stupefy." It noted that "there is some reason to suspect that transferred intent would be misapplied vis-à-vis § 1024(a)(3)." The State wrote that it had chosen to advance "a theory of the case under which Defendant very clearly did intend that T.F. and A.K. receive stupefying drugs," and therefore stated that it did not seek a jury instruction on transferred intent. Defendant also opposed a transferred intent theory, noting that Vermont had not adopted the doctrine. Defendant noted that this Court had ruled that aggravated assault is a specific intent crime, which requires the State to prove that the defendant has "acted with the conscious object of causing serious bodily injury or that he acted under circumstances where he was practically certain that his conduct would cause serious bodily injury." *State v. Kennison*, 149 Vt. 643, 651, 546 A.2d 190, 195 (1987) (quotation omitted).

¶ 9. Notwithstanding the parties' agreement that transferred intent was not appropriately applied in this case, the court instructed the jury that mistake was not a defense and that the State was not required to prove that defendant specifically intended to drug T.F. or A.K. The court read the State's charging information to the jury as stated above, which charged defendant with illegally drugging two people, "to wit," A.K. and T.F. But the

court then inserted the doctrine of transferred intent, and charged the jury:

> With respect to the [aggravated assault counts], the State must prove that Defendant intentionally caused stupor, unconsciousness or other physical or mental impairment to another person. . . .

> The State must prove that the Defendant's specific intention, objective or goal was to cause stupor, unconsciousness, or other physical impairment to another person. *The State is not required to prove, but may prove, that the Defendant intended that a specific person be harmed in this manner.* . . . Defendant's intent to cause stupor, unconsciousness or physical or mental impairment to a person other than someone who was harmed by his conduct is not a defense to these charges.

(Emphasis added.)

¶ 10. The jury convicted defendant of the L&L charge and both counts of aggravated assault. He raises three arguments on appeal, but we need address only the first — that the jury instructions unconstitutionally omitted the critical element of intent in the aggravated assault charges, thereby denying defendant a valid defense.

¶ 11. Our level of review of claims of error in jury instructions depends on whether the defendant preserved the error for appeal. "Where the defendant has made a timely, substantive objection to an allegedly deficient instruction after the charge and before the jury retires, we assess whether, viewing the instructions in their entirety, they provided sufficient guidance to the jury without introducing prejudice into their deliberations." *State v. Viens*, 2009 VT 64, ¶ 10, 186 Vt. 138, 978 A.2d 37 (quotation omitted). We will reverse based on faulty instructions only if the instructions, viewed in this light, "undermine confidence in the jury's verdict." *Id.* (quotation and brackets omitted).

¶ 12. The State concedes that defendant objected to the jury instructions on transferred intent, but argues that the objection was not sufficiently detailed to preserve the issue for review under

the requirements of Vermont Rule of Criminal Procedure 30.[3] This is simply a faulty reading of the record. During the charge conference there was a lengthy debate between the parties and the court over the application of the doctrine of transferred intent to the facts of this case. During this discussion, defendant repeatedly objected to the court's proposed instructions on transferred intent. After the court delivered the jury charge, defendant objected as follows during a sidebar conference: "We object to the instruction of intent regarding the aggravated assault charges, that the State does not have to prove there was an intent to harm a specific individual." Defendant made a detailed objection to the court's instructions on transferred intent, and this issue is clearly preserved for review.

■■ ¶ 13. A specific intent crime requires "as an essential mental element that the act be done purposefully or knowingly." *State v. D'Amico*, 136 Vt. 153, 156, 385 A.2d 1082, 1084 (1978).[4] Defendant was charged with aggravated assault under § 1024(a)(3), which requires the State to prove the accused "intentionally causes stupor, unconsciousness, or other physical or mental impairment or injury to another person by administering to *the other person* without the other person's consent a drug, substance, or preparation capable of producing the intended harm." (Emphasis added.) The statute specifically governs administration to "the other person." In the criminal information, the State named the alleged victims, the other persons, using "to wit" language, identifying T.F. and A.K. ("To wit" means "namely." Black's Law Dictionary 1498 (7th ed. 1999)). It is undisputed that the State's theory at trial was that defendant "very clearly did intend that T.F. and A.K. receive stupefying drugs."

■ ¶ 14. The purpose of a charging document is to "set forth charges with such particularity as will reasonably indicate the exact offense the accused is charged with, and will enable him to

---

[3] V.R.Cr.P. 30 reads in relevant part: "No party may assign as error any portion of the [jury] charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

[4] While we recognize that the Model Penal Code has done away with the common law distinction between specific and general intent crimes, "we still find the terms useful, and not without importance in our criminal law." *State v. Trombley*, 174 Vt. 459, 461 n.2, 807 A.2d 400, 403-04 n.2 (2002) (mem.).

make intelligent preparation for his defense." *State v. Christman*, 135 Vt. 59, 60, 370 A.2d 624, 625 (1977) (citations omitted). Prosecutors use "to wit" to give "notice to the defendant what actions [they] are alleging violate the statute." *State v. Aiken*, 2004 VT 96, ¶ 7, 177 Vt. 566, 862 A.2d 285 (mem.). Accordingly, a defendant charged with a crime that alleges specific conduct using "to wit" language will focus his or her defense "on the specific facts alleged in the information, vigorously contesting the claim." *Id.* ¶ 14. A trial court errs when it tells a jury that a criminal charge can refer to conduct other than that cited in the charging document. *Id.* ¶ 13.

¶ 15. Despite the State's charge and theory of the case and the relevant statutory language, the court eliminated the State's burden of proving that defendant specifically intended to drug the two named girls. The court instructed the jury that "[t]he State is not required to prove, but may prove, that the Defendant intended that a specific person be harmed in this manner." And, of course, defendant admitted at trial he deliberately gave "stupefying drugs" to his wife. With the court's instruction, it was virtually assured the jury would find defendant guilty of aggravated assault. This is constitutional error.

¶ 16. Because the State built its case around the theory that defendant intended to drug the girls, defendant built his defense on the theory of mistake. The jailhouse letter to his wife explained that drugging the girls was an accident. The court then permitted the State to present six witnesses to rebut the defense's theory of mistake. However, after defendant testified, the court decided that the State did not have to prove that he intended to drug a particular person, and that defendant would not be permitted to argue to the jury a defense of mistake.[5]

¶ 17. Our own cases have yielded similar results. Because aggravated assault is a specific intent crime, the State must show that a defendant "acted with the conscious object of causing serious bodily injury or that he acted under circumstances where he was practically certain that his conduct would cause serious bodily injury." *State v. Blakeney*, 137 Vt. 495, 501, 408 A.2d 636, 640 (1979). Accordingly, the State has the "burden of proving

---

[5] The judge stated that if the defense argued that because appellant made a mistake the jury should acquit, he would "stop [the argument] . . . and tell the jury that's error."

defendant's specific intent, a necessary element of the crime of aggravated assault, beyond a reasonable doubt." *Kennison*, 149 Vt. at 651, 546 A.2d at 195; see *State v. Martell*, 143 Vt. 275, 279-80, 465 A.2d 1346, 1348 (1983) (holding that shifting burden of proving intent was reversible error), *overruled on other grounds by State v. Myers*, 2011 VT 43, 190 Vt. 29, 26 A.3d 9.

■ ¶ 18. In this case, a plain-language review of 13 V.S.A. § 1024(a)(3) and the charging document clearly show that aggravated assault as charged requires the specific intent to drug T.F. and A.K. The information "narrowed and specified the conduct for which defendant was being charged." *Aiken*, 2004 VT 96, ¶ 11. By using "to wit," the State gave notice to defendant of the precise actions it alleged violated the statute and identified the alleged victims. *Id.* ¶ 7. And, when the information clearly states the conduct upon which the State relies in presenting its case, the State has the burden to prove this conduct to obtain a conviction. *State v. Brown*, 2005 VT 104, ¶¶ 41-42, 179 Vt. 22, 890 A.2d 79.

¶ 19. The court eliminated the element of intent from the State's burden of proof. As a result, the jury could have found defendant guilty of aggravated assault against T.F. and A.K. if they did not believe he actually intended to drug them. See *Sandstrom v. Montana*, 442 U.S. 510, 523 (1979) ("Upon finding proof of one element of the crime (causing death), and of facts insufficient to establish the second (the voluntariness and 'ordinary consequences' of defendant's action), [defendant's] jurors could reasonably have concluded that they were directed to find against defendant on the element of intent. The State was thus not forced to prove 'beyond a reasonable doubt . . . every fact necessary to constitute the crime . . . charged,' and defendant was deprived of his constitutional rights . . . .") (citation omitted). Defendant's ability to defend against the specific charges brought by the State was so substantially prejudiced that we must order a new trial. Accordingly, we reverse in part and remand for a new trial on the aggravated assault charges.

*Reversed and remanded for further proceedings consistent with the views expressed herein.*