NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 87

No. 2019-212

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Robert E. Stephens | June Term, 2020 |

David R. Fenster, J.

Sarah F. George, Chittenden County State's Attorney, and Andrew Gilbertson, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

Allison N. Fulcher of Martin Delaney & Ricci Law Group, Barre, and Robert E. Stephens, Pro Se, Swanton, for Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **COHEN, J.** Defendant appeals a jury conviction of attempted sexual assault, arguing that: (1) the State's evidence at trial was insufficient to establish the offense charged in the State's information, and the trial court's instruction permitted the jury to convict him for conduct not charged by the State; (2) the trial court erred by excluding evidence of an alleged prior sexual encounter between defendant and the complainant; (3) the court erred by allowing the State to present evidence of flight as consciousness of guilt and by not giving the jury a precautionary instruction on the limited probative value of that evidence; (4) the conviction must be vacated because the criminal case was not disposed of within the time frame set forth in the Interstate Agreement on Detainers (IAD); and (5) the court erred by not granting him a new trial based on newly discovered evidence. We affirm.

¶ 2. Based on a sexual encounter between defendant and the complainant partway down an outdoor stairwell in downtown Burlington shortly before noon on July 16, 2016, the State charged defendant with "attempt[ing] to engage in a sexual act with another person and to compel the other person to participate in the sexual act without the consent of the other person, to wit: by attempting to put his penis in contact with [the complainant's] anus without her consent, in violation of 13 V.S.A. § 3252(a)(1)." Following a three-day trial held June 19-21, 2018, a jury found defendant guilty of the charged offense. In June 2019, the trial court imposed a sentence of eight years to life.

I. Interstate Agreement on Detainers

¶ 3. As an initial matter, we reject defendant's argument that his conviction should be vacated for failure to comply with Article III of the IAD, which is set forth in 28 V.S.A. § 1503. Pursuant to § 1503(a), a person in a "party state"[1] who has "entered a term of imprisonment" that is continuing when another party-state lodges a detainer based on an untried information "shall be brought to trial [in the latter state] within 180 days after he or she shall have caused to be delivered to the prosecuting officer and the appropriate court . . . written notice of the place of his or her imprisonment and his or her request for a final disposition . . . of the . . . information."

¶ 4. A warrant for defendant's arrest was issued in September 2016 shortly after the State filed its information charging defendant with attempted sexual assault. In early 2017, defendant was arrested and detained in New York on unrelated charges. Vermont filed a fugitive-from-justice complaint, and in February 2017, defendant signed a formal waiver of his right to challenge extradition to Vermont. In March 2017, defendant sent a letter to the Chittenden criminal division indicating his willingness to return to Vermont to face the attempted-sexual-assault charge. Defendant was sentenced in connection with the New York charges in October 2017.

---

[1] The two states involved in this case—Vermont and New York—are both parties to the IAD.

2

¶ 5.    In December 2017, an inmate-records coordinator from New York sent the Chittenden County State's Attorney a packet of forms in accordance with the IAD.  The following month, the State's Attorney sent IAD forms to New York seeking transfer of defendant to Vermont for arraignment on the pending Vermont charge.  Defendant was extradited to Vermont and arraigned in February 2018.  In April 2018, defendant filed a motion asking the criminal division to dismiss the pending Vermont charge with prejudice based on the State's failure to try his case within the IAD's 180-day deadline.  The court rejected defendant's argument that the 180-day period in § 1503(a) was triggered by his March 2017 letter, noting that at the time defendant wrote the letter he was still a pretrial detainee who had not even begun serving a term of imprisonment in New York.  The court instead concluded that the 180-day period was triggered by New York's December 2017 submission of IAD forms to Vermont, which created a presumptive deadline of June 24, 2018, for Vermont to bring defendant to trial.

¶ 6.    In December 2018, following his conviction on the Vermont charge and the trial court's grant of his request for hybrid representation, defendant filed a pro se motion in which he argued that, even assuming the December 2017 submission triggered the 180-day period set forth in § 1503(a), his conviction must be vacated under the IAD because there was no final disposition of his Vermont case until June 2019, when he was sentenced.  Defendant reasserts this argument on appeal, contending that the IAD mandates final disposition of a criminal case—in other words, sentencing—before expiration of the 180-period set forth in § 1503(a).

¶ 7.    We find no merit to this argument.  The plain language of § 1503(a) requires that a person imprisoned in another state and subject to an untried information for which a detainer has been lodged "shall be brought to trial within 180 days after" submitting a proper "request for a final disposition" of the information. (Emphasis added.)  The term "request for final disposition" is used several times in § 1503, including in § 1503(d), upon which defendant relies.  Subsection 1503(d) provides that a "request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition" of all informations for which detainers have

3

been placed. (Emphasis added.) While the provisions in § 1503, including § 1503(d), speak in terms of a <u>request</u> for final disposition, the statute makes it clear that the end point for the 180-day appeal period set forth in § 1503(a) is when the defendant is "brought to trial." Accordingly, defendant's argument fails. See <u>State v. Love</u>, 2017 VT 75, ¶ 9, 205 Vt. 418, 174 A.3d 761 ("We look first to the statutory language's plain meaning and, if this language clearly expresses the legislative intent, we will enforce the statute without relying on statutory construction.").

## II. Evidence and Instruction on the Charged Offense

¶ 8. We next address defendant's intertwined arguments that the State's evidence was insufficient to prove the offense as charged by the State and that the jury instruction on the elements of the charged offense permitted the jury to convict him for uncharged conduct.

### A. Sufficiency of the Evidence

¶ 9. In challenging the sufficiency of the evidence, defendant emphasizes that the State's information narrowed the nature of the charged attempted sexual assault as follows: "to wit: by attempting to put his penis in contact with [the complainant's] anus." See 13 V.S.A. § 3252(a)(1) (prohibiting nonconsensual sexual act with another person); 13 V.S.A. § 3251(1) (defining term "sexual act" to include several types of conduct between persons, including "contact between . . . the penis and the anus"); see also <u>State v. Devoid</u>, 2010 VT 86, ¶ 10, 188 Vt. 445, 8 A.3d 1076 (explaining that two elements are required for attempt: "(1) intent to commit a certain crime; and (2) an overt act designed to carry out that intent"). As defendant asserts, by using the phrase, "to wit," in its information, "the State gave notice to defendant of the precise actions it alleged violated the statute." <u>State v. Kolibas</u>, 2012 VT 37, ¶ 18, 191 Vt. 474, 48 A.3d 610. "And, when the information clearly states the conduct upon which the State relies in presenting its case, the State has the burden to prove this conduct to obtain a conviction." <u>Id</u>.

¶ 10. Defendant asserts that no evidence supports the offense as charged by the State. In reviewing the denial of a motion for judgment of acquittal based on a claim of insufficient evidence, we apply the identical "standard as that employed by the trial court: we view the

4

evidence in the light most favorable to the State, excluding any modifying evidence, and determine whether it is sufficient to fairly and reasonably convince a trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Davis, 2018 VT 33, ¶ 14, 207 Vt. 346, 186 A.3d 1088 (alteration and quotation omitted); see V.R.Cr.P. 29. "By design, this standard largely defers to the important role of juries in our judicial system," such that Rule 29 permits the grant of a motion for judgment of acquittal—thereby "remov[ing] a case from the jury's consideration"—only "when there is no evidence to support a guilty verdict." State v. Jones, 2019 VT 3, ¶ 12, 209 Vt. 370, 206 A.3d 153 (quotation omitted). "Juries may draw reasonable inferences from circumstantial evidence to decide whether disputed ultimate facts occurred" but "courts cannot allow juries to bridge evidentiary gaps with speculation." Id. ¶ 13 (quotations omitted).

¶ 11. In opposing defendant's argument that the evidence did not support the charge, the State relies primarily on the following testimony by the complainant. On the day of the alleged assault, the complainant met defendant in downtown Burlington after receiving a phone call from him. It turned out that defendant was not the person whom the complainant thought had called her, but she eventually recognized defendant from a previous drug exchange that took place at her relative's house in February 2015. After defendant led the complainant down an outdoor stairwell, he pulled out a bag of crack cocaine and asked her if she wanted to make some money. When she said she did not do the drug anymore, defendant asked her if she would have sex with him. She said no.

¶ 12. After a person passed nearby, defendant pushed the complainant against a railing, with him facing her backside. He pinned her against the railing and attempted to untie the one-piece pant outfit she was wearing. He grabbed her breast and her "private parts," pressing himself up against her so that she "could feel his erection against [her] ass." According to the complainant, he kept pushing closer to her, trying "to enter [her] vagina . . . through [her] clothes, with his penis." At all times, defendant was behind the complainant, attempting to press his erect penis into her from behind. At one point, when the complainant could see that defendant had placed a

5

condom on his penis, defendant began pushing "more forcibly, . . . trying to proceed with whatever he thought he was going to get away with." When asked at trial where on her body he was pushing, the complainant responded: "My ass." The complainant felt part of her pants get wet from defendant's ejaculation before defendant ran back up the stairwell.

¶ 13. Defendant contends that the complainant's testimony supports only a mere suspicion that he was attempting to have anal intercourse with her. He argues that this conjecture about what he was trying to do is inconsistent with the complainant's own statement that he was trying to enter her vagina. He asserts that his positioning behind the complainant does not prove that he was attempting to penetrate her anus rather than her vagina.

¶ 14. We agree with defendant that his positioning during the alleged assault on the complainant, in and of itself, is inconclusive regarding the type of prohibited sexual act he intended. But the State did not have to prove that defendant intended anal penetration, as he suggests; rather, the State charged that defendant attempted to engage in a nonconsensual sexual act with the complainant by putting his penis <u>in contact with</u> her anus. The complainant testified multiple times that defendant pushed his erect penis up against her "ass" from behind "to proceed with whatever he thought he was going to get away with." The word "ass" is an informal word for buttocks or anus. See Ass, Merriam-Webster Online Dictionary, Merriam-Webster.com [https://perma.cc/H9Y8-FGTS].

¶ 15. Taking the evidence in the light most favorable to the State—including the positioning of defendant's body in relation to the complainant's body and defendant's actions as described above during the alleged assault—a reasonable jury could conclude beyond a reasonable doubt that defendant attempted to have contact with the complainant's anus during the charged sexual encounter with the complainant. See <u>State v. Discola</u>, 2018 VT 7, ¶ 24, 207 Vt. 216, 184 A.3d 1177 (recognizing that "[i]ntent is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence" (alteration in original) (quotation omitted)). Moreover, the complainant's testimony that at some point defendant attempted to put his erect

6

penis in her vagina does not preclude this Court from determining, based on the record before us, that a reasonable jury could conclude that defendant intended contact with the complainant's anus. See State v. Baird, 2006 VT 86, ¶ 13, 180 Vt. 243, 908 A.2d 475 ("When reviewing a case based largely on circumstantial evidence, the evidence must be considered together, not separately, even if defendant can explain each individual piece of evidence in a way that is inconsistent with guilt." (quotation omitted)).

### B. Jury Instructions

¶ 16.     In a related argument, defendant contends that the trial court committed plain error in instructing the jury on the elements of the charged offense by allowing the jury to find him guilty of conduct not charged in the State's information. See Kolibas, 2012 VT 37, ¶ 14 ("A trial court errs when it tells a jury that a criminal charge can refer to conduct other than that cited in the charging document."). In defendant's view, the trial court's instruction in this case essentially informed the jurors that they could find him guilty of any of the sexual acts listed in 13 V.S.A. § 3251(1), as opposed to only the charged sexual act of penis-to-anus contact.

¶ 17.     Because defendant did not object to the charge on these grounds at trial, he must demonstrate plain error on appeal. That requires him to show that there was an obvious and prejudicial error affecting his substantial rights and the fairness of his trial. See State v. Herrick, 2011 VT 94, ¶ 18, 190 Vt. 292, 30 A.3d 1285. As we have stated on many occasions, "plain error will be found only in rare and extraordinary cases where the error is obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." State v. Bruno, 2012 VT 79, ¶ 43, 192 Vt. 515, 60 A.3d 610. For the reasons set forth below, we conclude that defendant has failed to clear this high bar.

¶ 18.     The trial court instructed the jury as follows with respect to the charged offense:

> [T]he State has charged [defendant] with an offense commonly known as attempted sexual assault. It is alleged that [defendant] . . . attempted to engage in a sexual act with another person . . . without the consent of the other person; to wit, by

attempting to put his penis in contact with [the complainant's] anus without her consent.

The following are the essential elements which the State must prove beyond a reasonable doubt . . . . That on the date and place alleged; one, it was [defendant]; two, [defendant] attempted to engage in a sexual act with [the complainant]; three, he compelled [the complainant] to participate in a sexual act without [her] consent; and four, that he did so intentionally.

. . . .

The second essential element is that [defendant] attempted to engage in a sexual act with [the complainant]. . . .

. . . .

A sexual act means conduct between persons consisting of contact between the penis and the vulva, the penis and the anus, the mouth and the penis, the mouth and the vulva, or any intrusion however slight, by any part of a person's body or any object into the genital or anal opening of another.

The word contact as used in this charge means touching, however slight.

The third essential element is that [defendant] attempted to compel [the complainant] to participate in a sexual act without [the complainant's] consent. . . .

[The complainant] did not consent if [defendant] knew that [the complainant] was not physically capable of resisting or declining to consent to the sexual act.

The last essential element is that [defendant] acted with the following specific intent: intentionally. . . . You may find that [defendant] acted intentionally if it was his conscious objective to compel [the complainant] to participate in a sexual act without her consent.

. . . .

Here, the State alleges that [defendant] intentionally attempted to compel [the complainant] to participate in a sexual act without her consent by attempting to put his . . . penis in contact with [the complainant's] anus without her consent.

. . . .

If the State has not proven each of the essential elements of the charge beyond a reasonable doubt, then you must find [defendant] not guilty. However, . . . if the State has proven all of the essential

elements beyond a reasonable doubt, then you must return a verdict
of guilty.

¶ 19.    In instructing the jury on the essential elements of the charged offense, the trial court repeatedly referred to "a sexual act," which it defined, pursuant to § 3251(1), to include several different sexual acts, including penis-to-anus and penis-to-vagina contact.  Given the State's information specifying the type of sexual act alleged, the court should have used the term "the alleged sexual act"—penis-to-anus contact—rather than "a sexual act" when explaining to the jury what the State needed to prove pursuant to the State's information.  In addition, to avoid any confusion, rather than identifying all the statutorily defined types of sexual acts, the court should have instructed the jury that penis-to-anus contact was the statutorily prohibited act charged by the State.  Instructing the jury in this manner would have eliminated any danger of potential juror confusion as to what the State needed to prove with respect to the charged sexual act.

¶ 20.    Nevertheless, we conclude that the trial court's instruction does not rise to the level of plain error compelling a reversal of defendant's conviction.  We are mindful that "when the information clearly states the conduct upon which the State relies in presenting its case, the State has the burden to prove this conduct to obtain a conviction."  Kolibas, 2012 VT 37, ¶ 18.  But the animating concern underlying this requirement is assuring that the State provides constitutionally sufficient notice of the charged conduct to enable the defendant to prepare a defense.  See id. ("By using 'to wit,' the State gave notice to defendant of the precise actions it alleged violated the statute and identified the alleged victims."); State v. Aiken, 2004 VT 96, ¶ 12, 177 Vt. 566, 862 A.2d 285 (mem.) ("The function of the information is to set forth charges with such particularity as will reasonably indicate the exact offense the accused is charged with, and will enable him to make intelligent preparation for his defense." (quotation omitted)).

¶ 21.    This is not a case where, given the State's information, defendant was surprised by the evidence at trial or hampered in his defense.  Notably, defendant's primary defense at trial, as evidenced by his attorney's cross-examination of the complainant and closing argument, was not

that the charged sexual encounter did not occur, but rather that the encounter was consensual and that complainant was not credible about her continuing drug use or prior familiarity with defendant. Nonetheless, during closing argument, defendant's attorney reminded the jury that the charged sexual act was penis-to-anus contact.[2] Indeed, he went further, incorrectly telling the jury, without objection from the prosecutor, that the State's theory was that defendant "specifically intended, specifically to have [non]consensual sexual anus <u>penetration</u> with [the complainant]." (Emphasis added.) Toward the end of his closing argument, defendant's attorney emphasized this point, stating as follows:

> [T]he jury instruction is going to tell you specifically that ... [defendant] forcefully and specifically intended to penetrate the complaining witness's anus. That orifice, not once, during any of the dialogue and the colloquies ever came up. That phrase, specifically intended to penetrate the complaining witness' anus. Anus never once came up.
>
> But there's a generic term. We understand (indiscernible) [ass[3]] is not the same as an orifice. And understand, this is a specific intent crime. That was never ever proven beyond a reasonable doubt.
>
> Not only is the specific intent needed, but you have to get to the point where you believe the subjective intent was so specifically intended to cause this specific penetration of the complaining witness' anus. And those facts, testimony, never appear, ever.

¶ 22.    At both the beginning and the end of its instruction on the charged offense, the trial court plainly stated that defendant was charged with attempted sexual assault by placing his penis in contact with the complainant's anus. That was the particular sexual act the court asked the jury to consider in this case in rendering its verdict. Although the court did not explicitly state that the State had to prove what it charged, its failure to make that point explicit was not plain error under

---

[2] To be sure, the trial court correctly instructed the jury that it "was obligated to accept the law as" given in the court's instructions and that the attorneys' "opening statements and closing arguments . . . are not evidence." However, rather than making a statement of the law, defendant's attorney was reminding the jury of the specific sexual act charged.

[3] The transcript indicates "indiscernible," but given the complainant's testimony quoted earlier, we assume that defendant's attorney was referring to the complainant's use of the word "ass."

the circumstances of this case. This is not a situation, as in <u>Kolibas</u>—a case in which the defendant objected at trial to the jury instruction he challenged on appeal—where we reversed a conviction because the trial court's instruction eliminated an element of the charged offense and deprived the defendant of fair notice of the charge against him. 2012 VT 37, ¶¶ 15-16, 18-19 (reversing lewd-and-lascivious-conduct and aggravated-assault charges because trial court's jury instructions "eliminated the State's burden of proving that defendant specifically intended to drug the two named girls" in State's information, thereby allowing jury to find defendant guilty of charged assault against those girls even if jurors "did not believe he actually intended to drug them").

¶ 23. In sum, having reviewed the complainant's testimony, defendant's primary defense at trial, defendant's closing argument and the trial court's instruction on the charged offense in its entirety, we find no plain error warranting reversal. See <u>State v. Sullivan</u>, 2017 VT 24, ¶ 22, 204 Vt. 328, 167 A.3d 376 (stating that jury instructions are reviewed "in their entirety" to determine if jury was misled and that "[w]e will reverse a conviction only if the charge undermines confidence in the jury's verdict"); see also <u>State v. Dow</u>, 2016 VT 91, ¶ 25, 202 Vt. 616, 152 A.3d 437 (stating that "we will reverse [for plain error] only if there was an error that seriously affected substantial rights and had an unfair prejudicial impact on the outcome of trial"). There was ample evidence that defendant attempted to put his penis in contact with complainant's anus without her consent; defendant was on notice of the charged offense and unhampered in his defense of that charge. Read in its entirety, and in the context of the evidence and arguments in this case, the court's jury instruction does not undermine confidence in the jury's guilty verdict.

### III. Exclusion of Evidence Under Rape Shield Law

¶ 24. Next, defendant argues that the trial court committed reversible error by excluding, pursuant to Vermont's rape shield law, evidence of a prior sexual encounter between defendant and the complainant. We conclude that the trial court did not abuse its discretion in excluding defendant's proffered evidence of a prior sexual encounter between him and the complainant involving sex in exchange for drugs. See <u>State v. Patten</u>, 2018 VT 98, ¶ 18, 208 Vt. 312, 197 A.3d

873 (reviewing trial court's evidentiary ruling under rape shield law "for an abuse of discretion"); State v. Lavalette, 154 Vt. 426, 428, 578 A.2d 108, 109 (1990), overruled on other grounds by State v. Brillon, 2008 VT 35, ¶ 14, 183 Vt. 475, 955 A.2d 1108 (stating that trial court's analysis of admissibility of evidence of complaining witness's prior sexual conduct with defendant under rape shield law "lies within the discretion of the trial court"); see also State v. Shippee, 2003 VT 106, ¶ 13, 176 Vt. 542, 839 A.2d 566 (mem.) (stating that to prevail on abuse-of-discretion claim, "defendant must prove the court either completely withheld its discretion or exercised it on grounds clearly untenable or unreasonable").

¶ 25.    Vermont's rape shield law makes an exception to its general prohibition against the admission of evidence of a complaining witness's prior sexual conduct when the proffered sexual conduct is with the defendant and "bears on the credibility of the complaining witness or it is material to a fact at issue and its probative value outweighs its private character."  13 V.S.A. § 3255(a)(3)(A).  Pursuant to this exception, the proffered past sexual conduct "must have been reasonably contemporaneous, and the relationship between the parties must support a reasonable belief that there was consent to the renewed sexual activity."  State v. Gonyaw, 146 Vt. 559, 563, 507 A.2d 944, 947 (1985) (reversing trial court's exclusion of evidence under rape shield law because consensual sexual activity between complaining witness and defendant "over a period of years, coupled with a claimed consensual act reasonably contemporaneous with the act complained of, [was] clearly material on the issue of consent"); cf. Lavalette, 154 Vt. at 428, 578 A.2d at 109 (upholding trial court's exclusion under rape shield law of evidence of past sexual conduct between complaining witness and defendant because proffered evidence had little probative value where "sexual conduct ceased some eighteen months earlier").

¶ 26.    Shortly before trial, the trial court considered the State's motion in limine to exclude all evidence pertaining to the complainant's past sexual history, as well as defendant's motion to allow evidence that, in the fall of 2015, the complainant engaged in consensual sexual intercourse with defendant in exchange for crack cocaine.  Defendant's attorney told the court that

12

he sought to introduce evidence of one prior consensual sexual encounter between the complainant and defendant that allegedly occurred in October or November of 2015. He explained that he intended to ask the complaining witness only whether she had engaged in consensual sex with defendant at that time. If she said no, he would end that line of questioning and move on. Defendant's attorney acknowledged that the complainant would probably deny having had a prior sexual encounter with defendant because she had denied doing so during her deposition; defendant's attorney contended, however, that because this was a credibility and consent case, he had a good-faith basis for asking her that question at trial.

¶ 27. For purposes of ruling on defendant's motion, the trial court assumed that the complainant would admit to a prior sexual encounter with defendant in October or November of 2015, eight or nine months before the charged sexual encounter took place. After examining our case law, the court excluded the proffered evidence because, at best, defendant was alleging a single sexual encounter between himself and the complainant approximately nine months before the charged sexual encounter, which the court did not find to be reasonably contemporaneous or probative of whether the complaining witness consented to having sex during the charged encounter. In so ruling, however, the court emphasized that it was not excluding any evidence concerning how often or where the complainant and defendant had met before the charged encounter and that it was not making any ruling as to whether defendant could introduce evidence about his relationship with the complainant pertaining to the sale of crack cocaine.[4]

¶ 28. We conclude that the trial court acted within its discretion in refusing to allow defendant's attorney to ask the complaining witness if she had had consensual sex with defendant in exchange for crack cocaine approximately nine months before the charged encounter. The court reasonably concluded that the alleged single prior sexual encounter between the complainant and

---

[4] In fact, defendant's attorney extensively cross-examined the complainant about the extent of her contact and familiarity with defendant prior to the charged sexual encounter. Defendant's attorney also emphatically challenged the complaining witness's credibility on this point during his closing argument to the jury.

defendant was not reasonably contemporaneous with the charged sexual encounter and that it would have little probative value in determining whether the complainant consented to having sex with defendant during the charged encounter. See State v Prue, 2016 VT 98, ¶ 50, 203 Vt. 123, 153 A.3d 551 (stating that, absent abuse of discretion, this Court will not disturb on review trial court's balancing of probative value of proffered evidence against danger of its unfair prejudicial impact); cf. State v. Patton, 2018 VT 98, ¶ 22, 208 Vt. 312, 197 A.3d 873 (concluding that trial court did not abuse its discretion in excluding under rape shield law evidence of "isolated incident occurring five months prior to the initial sexual contact").

¶ 29. Defendant's reliance on State v. Memoli, 2011 VT 15, 189 Vt. 237, 18 A.3d 567, is misplaced. In that case, the defendant appealed from a jury conviction of aggravated sexual assault. We reversed the trial court's exclusion of most evidence of the complaining witness's drug use, which the trial court had excluded in part based on the rape shield law. Id. ¶ 18. We pointed out that the defendant wanted to admit evidence of the complaining witness's use of crack cocaine "to demonstrate [the] complainant's affection for the drug" to support his defense "that her desire for cocaine was strong enough to motivate her to consent to sexual interactions with him in exchange for the drug." Id. ¶ 20. Critically, we emphasized that the rape shield law was "not applicable because [the] defendant did not seek to introduce evidence of [the] complainant's prior sexual conduct." Id. (quotation omitted). Hence, we concluded that there was "no logical reason" to exclude evidence of the complaining witness's drug use under the rape shield law's policy. Id. ¶ 22. In contrast, in this case, defendant sought to introduce evidence of a prior sexual encounter he claimed to have had with the complainant, which is exactly the type of evidence that the rape shield law proscribes.

## IV. Flight as Consciousness of Guilt

¶ 30. Next, defendant argues that the trial court committed reversible error by permitting the State to present evidence of flight as consciousness of guilt and then compounded that error by

not giving the jurors a cautionary instruction on the permitted use of such evidence. Again, we find no reversible error.

## A. Admission of Evidence of Flight

¶ 31. On the morning of the jury draw, defendant's attorney opposed the State's request to introduce video surveillance footage showing defendant leaving the residence where he was staying with bags packed in a shopping cart in the wee hours of the morning after police questioned him the night before about the alleged assault on the complainant. Defendant's attorney objected to admission of the evidence as unduly prejudicial, stating that there were reasons other than the police investigation into the alleged assault for defendant to have left the residence that night, including his host's displeasure at the unwanted police involvement. The trial court deferred ruling on admission of the video until the following day, the first day of trial. Before the presentation of evidence began, the court ruled that although the proffered video had "problematic value," it was admissible under this Court's case law, and that the parties could argue about its weight in their closing arguments. The court emphasized that, although it was admitting the video, it would not allow any speculative testimony on why defendant was leaving the residence at that time. Defendant's attorney responded, "if it's going to be limited to that, then that's fine."

¶ 32. Assuming without deciding that this exchange constituted a properly preserved objection rather than "invited error,"[5] we conclude that the trial court did not abuse its discretion in admitting the video. "The admission of flight evidence itself is problematic, although there is a lengthy history allowing the admission of this evidence to show consciousness of guilt." State v. Perrillo, 162 Vt. 566, 569, 649 A.2d 1031, 1033 (1994). "The probative value of evidence of flight as circumstantial evidence of guilt depends upon the confidence placed on four inferential steps" that proceed "from the defendant's behavior to flight, from flight to consciousness of guilt, from

---

[5] Under the "invited error doctrine," a "branch of the doctrine of waiver," a party cannot "induc[e] an erroneous ruling and later seek[ ] to profit from the legal consequences of having the ruling set aside." State v. Longe, 170 Vt. 35, 39 n.*, 743 A.2d 569, 572 n.* (1999) (quotation omitted).

15

consciousness of guilt to consciousness of guilt concerning the [charged offense], and from consciousness of guilt concerning the [charged offense] to actual guilt of the crime charged." Id. at 570, 649 A.2d at 1034; see State v. Scales, 2017 VT 6, ¶¶ 7-14, 204 Vt. 137, 164 A.3d 652 (noting this Court's recognition of limited probative value of consciousness-of-guilt evidence but examining four inferential steps cited in Perrillo in determining admissibility of such evidence in that case).

¶ 33. The facts in this case are that, after obtaining a search warrant, police questioned defendant at the residence where he was staying on the evening of July 16, 2016, about the alleged assault of the complainant earlier that same day. Defendant told police that he did not have, or did not remember having, any sexual encounter earlier that day. In response, the officer told defendant that he would be requesting an order to obtain a DNA sample and, if the request were granted, the officer would be back in a day or so. When the officer returned to the residence to speak to defendant again, defendant was no longer there, and the officer obtained from the property manager the video showing defendant leaving the residence, with what appeared to be his belongings in a shopping cart, at approximately 2:00 a.m. on July 17, 2016, a few hours after police had initially questioned him. Police were unable to locate defendant, who was later arrested in New York on unrelated charges.

¶ 34. Given these facts, the trial court did not abuse its discretion in admitting the surveillance video. To be sure, defendant proffered plausible alternative reasons other than consciousness of guilt for his leaving the residence that night—the resident's displeasure at police arriving at the residence and the fact that the building manager had informed the resident that defendant had exceeded the number of days guests were permitted to stay at the residence.[6] Nevertheless, the timing of defendant's departure with his belongings in the middle of the night

---

[6] In fact, defendant's attorney cross-examined the building manager about the guest policy at the residence where defendant was staying and the manager's conversation with the resident of the unit concerning defendant having overstayed the allotted time. Defendant's attorney also raised this point during his closing argument.

mere hours after police questioned him about the alleged sexual assault and told him they would likely be back soon satisfied the inferential steps to justify admission of the video. See State v. Welch, 2020 VT 4, ¶ 9, ___ Vt. ___, 228 A.3d 85 ("When evidence of flight is properly admitted in a criminal trial, the jury can rely on it as circumstantial evidence of guilt."); cf. Scales, 2017 VT 6, ¶ 15 n.2 (explaining that State is not precluded from introducing consciousness-of-guilt evidence, but "where the consciousness-of-guilt evidence was remote in time from the alleged crime and negligible evidence demonstrated defendant's knowledge of [police interest in the underlying offense], the evidence lacked probative value in connection with the crime"). The fact that by the time of trial when the video was admitted defendant had abandoned his denial of a sexual encounter on the day of the alleged assault does not undercut the probative value of the video showing that defendant left the residence shortly after denying a sexual encounter to police and being told that the police would likely be returning soon to further investigate the alleged assault.

## B. Omission of Limiting Instruction

¶ 35. In a related argument, defendant contends that the trial court committed reversible error by failing to give a limiting instruction in conjunction with its admission of the video as evidence of consciousness of guilt. Because defendant did not seek a limiting instruction, we consider only whether the omission of a limiting instruction constituted plain error warranting reversal of defendant's conviction. Perrillo, 162 Vt. at 570, 649 A.2d at 1034 (stating that we review only for plain error when there is no objection to omission of jury instruction).

¶ 36. Citing Scales, 2017 VT 6, ¶ 19, we stated in a recent opinion issued after the trial in this case that, if a trial court admits evidence of flight as circumstantial evidence of guilt, "it must give a limiting instruction to guide the jury's use of the evidence." Welch, 2020 VT 74, ¶ 9 (emphasis added). But the cited paragraph in Scales states only that a particular type of instruction on consciousness-of-guilt evidence similar to what we had approved in a previous case "should be given when consciousness-of-guilt evidence is properly admitted in a case," and that "refusal of

17

the court to give the instruction [in that case] created further prejudice from the" erroneously admitted evidence. 2017 VT 6, ¶ 19 (emphases added). Unlike in this case, in Welch the trial court gave a limiting instruction on evidence of flight as circumstantial evidence of guilt, to which defendant did not object. 2020 VT 74, ¶ 5. We concluded that the "[b]est practice" would be to instruct jurors on the limited probative value of evidence of flight as consciousness of guilt, informing them that such evidence is not sufficient alone to support a guilty verdict, but rather should be weighed along with other evidence presented at trial. Id. ¶ 16. Nonetheless, we concluded that the trial court's failure to provide such an instruction in that case did not constitute plain error because the court's instructions as a whole did not undermine confidence in the jury's verdict and "because there was ample other evidence supporting the jury's verdict." Id. ¶¶ 17-18.

¶ 37. Thus, we did not hold in Welch that a trial court's failure to provide a limiting instruction when admitting evidence of flight as consciousness of guilt, absent any request for such an instruction, constitutes plain error as a matter of law requiring reversal of the underlying conviction. Here, we conclude that under the circumstances of this case the court's failure to give an unrequested limiting instruction does not warrant reversal of defendant's conviction. Similar to the situation in Welch, in this case the complainant's testimony provided ample evidence of a nonconsensual sexual assault. Id. ¶ 18. Defendant has failed to demonstrate that omission of a limiting instruction on admission of the video raises doubts about the fairness of the criminal proceeding or undermines confidence in the jury's verdict.

V. Claims of Newly Discovered Evidence

¶ 38. Finally, in his pro se supplemental brief, defendant argues that he is entitled to a new trial based on alleged newly discovered evidence.

A. The Complainant's Facebook Post

¶ 39. In January 2019, defendant filed with the trial court a motion for a new trial pursuant to Vermont Rule of Civil Procedure 33, which allows the filing of a motion for a new trial based on newly discovered evidence no later than "two years after final judgment" and permits

18

the trial court to grant a new trial "in the interests of justice." Defendant's motion was based on his discovery of the following Facebook post made by the complainant on June 20, 2018, the day after she testified at defendant's trial and the day before the jury rendered its guilty verdict: "Sucks when u fuck over the wrong one. She has an evil side enjoy ur day xoxo." In an April 2019 decision, the trial court denied defendant's motion for a new trial based on its conclusion that this evidence was merely proffered impeachment evidence unlikely to change the result on retrial. We conclude that the trial court did not abuse its discretion in denying the motion. See Bruno, 2012 VT 79, ¶ 16 ("We review the trial court's ruling on [a] new trial motion for abuse of discretion, and will not overturn the trial court's decision unless the court abused or withheld its discretion.").

¶ 40. "Motions for [a] new trial on the ground of newly discovered evidence are not favored by the courts and are viewed with great caution; courts are properly reluctant to grant a second trial once a defendant has had his or her day in court and been fairly tried." State v. Shreiner, 2007 VT 138, ¶ 26, 183 Vt. 42, 944 A.2d 250. As we stated in Bruno:

> To succeed on a motion for a new trial based on newly discovered evidence, defendant must prove each of the following elements: (1) new evidence would probably change the result on retrial; (2) the evidence was discovered only subsequent to trial; (3) the evidence could not have been discovered earlier through the exercise of due diligence; (4) the evidence is material; and (5) the evidence is not merely cumulative or impeaching.

2012 VT 79, ¶ 9. "In assessing whether newly discovered evidence would probably lead to a different result upon retrial, the trial court must evaluate the quality of the evidence presented." Id. ¶ 10. "Defendant must show that the new evidence would likely lead to an acquittal of the defendant on retrial." Id. (quotation omitted).

¶ 41. In this case, the trial court concluded that defendant's proffer of the Facebook post did not satisfy the first or fifth elements set forth in Bruno because: (1) defendant could only speculate based on the timing of the post that the post actually related to the complainant's trial testimony; (2) the post—including the clause, "she has an evil side"—did not demonstrate that the complainant's testimony was untruthful; (3) defendant failed to show that the post tied into the

19

defense theory of the case or proved a fact at issue in the case; and (4) at most, the post could be used only as impeachment evidence indicating the complainant's improper motive, but defendant presented no evidence at trial suggesting the complainant had any motive to lie about the sexual assault. The court acknowledged that the post could be construed as someone (presumably the complainant) seeking vindication for the wrong done to her (presumably the sexual assault), but the court concluded that the post did not establish any facts. The court also concluded, in weighing the post against the evidence presented at trial, that the post was unlikely to change the result at any retrial because defendant had not presented much of a defense to the State's strong case at trial.

¶ 42.    In his pro se supplemental brief, defendant argues that the post impugned the complainant's credibility and strongly suggested that she gave false testimony against him at trial. In support of that assertion, he states that it could be considered evil to testify untruthfully to help secure a wrongful conviction. In defendant's view, if the complainant's testimony had been truthful, there would be nothing evil about what the complainant had done at trial.

¶ 43.    We find these arguments unavailing. The trial court applied the proper standard and gave rational reasons explaining why the post was at most only potential impeachment evidence containing mere inferences that would most likely have no impact on the outcome of any retrial, given the evidence presented by the State at trial.

### B. Alleged Federal Case Involving the Complainant

¶ 44.    Defendant also seeks a new trial based on his allegation, raised for the first time on appeal, that the complainant was a victim or witness in a federal criminal proceeding involving prostitution. Defendant alleges that he obtained this information from a person with whom he was incarcerated. He argues that the prosecution was required to disclose such information, but he does not allege that the information was ever in the prosecution's possession. We decline to consider this argument because defendant has not moved for a new trial in the criminal division based on this proffered newly discovered evidence, and review by this Court is "not feasible

20

because the factual record is not adequately developed." State v. Nash, 2019 VT 73, ¶ 15, ___ Vt. ___, 221 A.3d 386.

Affirmed.

FOR THE COURT:

_____

Associate Justice